GOUGH v. JEWETT.

(Supreme Court, Appellate Division, Second Department. June 28, 1898.)

INSURANCE—CONSTRUCTION OF POLICY—CUSTOM.

In an action upon a fire insurance policy, containing a warranty that "a continuous clear space of 100 feet shall be maintained between the property insured and any woodworking establishment, tramways, upon which lumber is not piled, alone being excepted," it appeared that the property was piled in close proximity to long wooden platforms extending back to the plaintiff's sawmill. The plaintiff introduced evidence to show that these platforms were known among those familiar with sawmills as "tramways." *Held* that, in the absence of a showing that the platforms were understood to be tramways, at the time the contract was entered into, by both parties, the evidence did not warrant a finding in the plaintiff's favor.

Appeal from trial term, Richmond county.

Action by Arthur E. Gough against Edgar B. Jewett. From an order setting aside a verdict for plaintiff and granting a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

Arthur S. Luria, for appellant.
George H. Pettit, for respondent.

WOODWARD, J. The appellant, as the assignee of the Cascade Lumber Company, brought this action to recover from the defendant, as an underwriter of the Electric City Lloyds, his portion of a loss by fire sustained by the Cascade Lumber Company on its property at Burlington, Iowa. There is no dispute as to the issuing of the policy, the amount involved, or the loss. The defense is that the policy was not in force at the time of the fire, on the ground that the warranty of the insured as to clear space between the property insured and the sawmill was not kept. This warranty provides that "a continuous clear space of 100 feet shall hereafter be maintained between the property hereby insured and any woodworking or manufacturing establishment; * * * tramways, upon which lumber is not piled, alone being excepted." The insurance was upon lumber in the mill yard of the Cascade Lumber Company. In the rear of the sawmill there is a platform about 30 feet wide, and from this platform there are four platforms, about 10 feet wide and from 500 to 600 feet in length, running back into the yard, in proximity to the railroad tracks. The lumber on which this insurance was written, and which was destroyed by fire, was between these platforms, extending back from the sawmill. The fire originated in the sawmill, and was conducted by these platforms to the lumber, which was consumed.

On the trial it was contended that these platforms, which were used to carry away the lumber from the sawmill, were "tramways," within the meaning of the exception clause in the policy of insurance, and that the Cascade Lumber Company had a right to recover under the terms of the policy. Evidence was introduced tending to establish the fact that these platforms were known among mill owners, and those familiar with sawmills, as "tramways," but there was no evidence that the defendant was familiar with this designation, or that it was a matter of such general knowledge that he must be presumed to have known it at the time of making the contract; and we are of opinion that, before the plaintiff can lawfully recover, he must show that these platforms were understood to be "tramways" at the time the contract was entered into by both parties to the agreement, and this has not been done. "It would seem, however, that, upon principle, for a party to be bound by a local usage, or a usage of a particular trade or profession," say the court in the case of Walls v. Bailey, 49 N. Y., at page 473, "he must be shown to have knowledge or notice of its existence. Clayton v. Gregson, 5 Adol. & E. 302. For upon what basis is it that a contract is held to be entered into with reference to, or conformity with, an existing usage? Usage is ingrafted upon a contract, or invoked to give it a meaning, on the assumption that the parties contracted in reference to it; that is to say, that it was their intention that it should be a part of their contract wherever their contract in that regard was silent or obscure. But could intention run in that way unless there was knowledge of the way to guide it? No usage is admissible to influence the con-

struction of a contract unless it appears that it be so well settled, so uniformly acted upon, and so long continued as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference thereto.    There must be some proof that the contract had reference to it, or proof arising out of the position of the parties, their knowledge of the course of business, their knowledge of the usage, or other circumstance from which it may be inferred or presumed that they had reference to it."    In the case at bar there was lacking that evidence of general knowledge of the custom of calling a platform a "tramway" which would justify the presumption that the defendant was aware of the usage, or that he contracted with reference to such a "tramway," and, in the absence of evidence that he knew of the usage, it would be a travesty upon justice to hold that he was responsible for a loss occurring under the circumstances of this case.    A "tramway," in the ordinary use of this word, means a railroad or railway over which cars are operated; and, in the absence of evidence that the defendant knew of the custom of calling these platforms "tramways," the jury could not be justified in bringing in a verdict for the plaintiff, for it had no right to assume that the contract contemplated anything more than the customary use of this word in its exception clause.    A policy of insurance must be construed reasonably, and especially so when a reasonable construction is consistent with the language of the contract as commonly understood. The premiums are paid upon the basis of the risks assumed by the insurers, and no reasonable or fair-minded man will contend that an insurance policy which required at least 100 feet of clear space between the "property hereby insured and any woodworking or manufacturing establishment" is complied with in good faith when the property insured is in close proximity to a series of elevated platforms 10 feet wide, directly connected with the sawmill upon the property of the insured.    The object of the clause for free space surrounding the property insured was to protect the property, and to reduce the cost of insurance, and it is absolutely meaningless and without force if these platforms, admirably adapted as they were to communicate fire to the insured property, are now to be understood as the excepted tramways.    A "tramway," as ordinarily understood, would not endanger the insured property to any great extent.    Except under extraordinary circumstances, it would not carry fire a distance of 100 feet; while the substantially constructed platforms, 10 feet above the ground, well seasoned, as they must have been, would burn their entire length as readily as any part of the mill property, and thus afford the same menace to the insured property that would have resulted if the lumber had been piled within a few feet of the mill itself. To now call these platforms "tramways" is to enlarge the liabilities beyond those which it is reasonable to assume were accepted by the defendant at the time of writing the insurance, and to render the space clause meaningless in the contract, which, like other contracts, is to be considered as a whole, giving, so far as possible, a meaning to each clause.    There is no reason to doubt that the policy of insurance would not have been written if the defendant had understood that it was intended to cover property which was within a few feet

of a series of elevated platforms directly connected with the mill.
Ordinarily prudent insurance, based upon the proposition that the
property insured must have a clear space of 100 feet between wood-
working establishments, could not accept such a risk, and we must
assume that this defendant was contracting upon a business basis,
and having in view the risks which he was assuming in making the
contract. As was said in the case of Harris v. Tumbridge, 83 N. Y.,
at page 100, Judge Finch, delivering the opinion of the court:

"That contracts for the use of a 'straddle,' in a manner different from that
contemplated by the agreement of these parties, were more or less common,
was wholly immaterial; and a custom or usage which binds the parties to a
contract does so only upon the principle either that they have knowledge of
its existence, or that it is so general that they must be supposed to have con-
tracted with reference to it."

The order granting new trial should be affirmed, with costs. All
concur.