# Woodward Iron Co. *v*. Lewis.

## *Damages for Injury to Servant.*

(Decided Feb. 2, 1911.    54 South 566.)

1. *Master and Servant; Injury to Servant; Complaint.*—Where the
action was for the wrongful death of the servant, a count in a com-
plaint which alleges the relation of master and servant between the
defendant and the intestate, and that the intestate, and the negligent
servant were fellow servants, that death was caused by reason of the
negligence of the fellow servant who had charge or control of an
electric motor car upon a railway in defendant's mine, states a good
cause of action under subdivision 5, section 3910, Code 1907.

2. *Same.*—A complaint drawn under subdivision 5, section 3910,
Code 1907, must allege distinctly and plainly that the car, etc., was
upon a railway.

3. *Same; Contributory Negligence.*—Where the action was for the
death of a boy under fourteen years of age, caused by being run over
by a car in defendant's mine, it was a good defense to show that the
boy, with knowledge of the danger, left his place of work, and in
violation of a rule, rode a car up the slope while it was in motion,
and got off in front of a car coming down, and was killed.

4. *Same; Rules.*—The violation of a reasonable rule promulgated
by the master for the servant's protection and of which he has
knowledge, is contributory negligence on the part of the servant.

5. *Same; Rules; Reasonableness.*—A rule in a mine that the latch-
boy under fourteen years of age should not ride the trips of cars
on a slope of the mine, is a reasonable rule.

6. *Same; Duty to Promulgate.*—It is not only the right, but it is
the duty of a master to promulgate reasonable rules for the conduct
of its business so far as it is reasonably necessary and proper to pro-
tect the servants in the performance of their duties.

7. *Same; Notice to Servant.*—In order to bind the servants by the
rules or regulations, the master must inform the servants of them.

[Woodward Iron Co. v. Lewis.]

8. *Same; Warning; Inexperienced Employee.*—Where the servant is a minor the duty of the master to warn them of danger is stricter than in cases of an adult, and the performance of the duty and sufficiency of the warning depends on the experience, age and intelligence of the particular servant to be warned.

9. *Same; Action; Plea*—A plea which sufficiently alleges the minor servant's notice of a rule of defendant's mine, his knowledge and violation of it with knowledge of the resulting danger, puts in issue the question whether the minor was of sufficient age or understanding to know or comprehend the rule. or to appreciate the danger of violating it.

10. *Same.*—It is a proper matter for replication, and need not be negatived by plea that a rule set up in the master's plea was habitually violated with the knowledge of the master, and to such an extent as to abrogate it.

11. *Same; Statutory Provision; Railway; Tramway.*—A tramway laid in the slope of a mine upon which tram cars are operated by electric motors on tracks having switches and run on rails in carrying ore from the bottom of the slope or mine to the top where the cars are dumped. is a railway within the meaning of subdivision 5, section 3910, Code 1907.

12. *Same; Nature of Action.*—The Employer's Liability Act was made for the benefit of the servant; it creates no new cause of action, but merely adds a remedy against the master as well as the negligent servant in cases which are within its purview, and if the injured servant has no action against the negligent servant, at common law, he has none against the master under the statute; the statute does not give an absolute right of action nor deprive the servant of any right of action which he had at common law. but it merely removes the fellow servant doctrine as to cases within the statute.

13. *Same; Fellow Servant; Negligence of Any Person.*—The negligent employee for whose negligence the master is liable under subdivision 5, section 3910, Code 1907, may be superintended, a servant whose orders the injured servant must obey, or an employee charged with the duty of looking after the condition of the ways, works, etc.

14. *Same; Railway.*—A railway to which subdivision 5, section 3910, Code 1907, refers, extends to both public and private railways, and includes switches. sidetracks and temporary railways, as well as mainlines, and the motive power or style of engine is immaterial.

15. *Same; Trial; Jury Question.*—Where the action is by an administrator of a minor employee under subdivision 5, section 3910, Code 1907, and there is a conflict in the evidence as to whether the minor had left his place in disobedience to a rule of the master, and was injured, without the protection of the statute, the question becomes one for the jury.

16. *Same; Assumption of Risk; Instruction.*—Where the charges used the terms "assumption of risk" and "contributory negligence" interchangeably, in an action by the administrator of a minor servant for injuries resulting in death as if there was no difference on account of the age of the intestate, error is committed, for while the

servant might not be chargeable with contributory negligence on account of his age, or capacity he may assume the risk by virtue of his employment and the knowledge of ordinary risks and danger.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

Action by H. B. Lewis, administrator, against the Woodward Iron Company. Judgment for plaintiff, and the defendant appeals. Reversed and remanded.

Count 3 is as follows: "Plaintiff, H. B. Lewis, as administrator of the estate of James Thomas Lewis, deceased, claims of the defendant, the Woodward Iron Company, $20,000 as damages, for that heretofore, on, to wit, the 10th day of December, 1908, plaintiff's intestate, James Thomas Lewis, a minor under the age of 14 years, was in the employment of the defendant in a certain coal mine at or near Dolomite, Jefferson county, Alabama, and while coming up the slope of said mine from his place of work therein he was run upon by a certain car or cars, and so mashed and mangled and injured that he died, to plaintiff's damage in the sum aforesaid. Plaintiff avers that the said intestate's death was caused, and he sustained said injury, by reason and as a proximate consequence of the negligence of a person in the service and employment of the defendant, who then and there had the charge or control of said car, and the electric motor by which the said car was being run upon a railway in said mine, while acting within the line and scope of his employment, to wit, one Till Snow."

The demurrer to said count is as follows: "Said count fails to set up facts sufficient to show that it is within the influence of subdivision 5 of the employer's liability act [Code 1907, § 3910]. (2) The count does not state that said railway was a railroad within the meaning of the employer's liability act. (3) It fails to allege that plaintiff's intestate was a railroad employee of de-

[Woodward Iron Co. v. Lewis.]

fendant.    (4) It fails to allege whether the track was
a switch or a main line. (6) It is common knowledge
that mine owners do not construct railways, such as are
contemplated in the act, inside their mines, and said
count fails to present a cause of action against the de-
fendant."

CABINESS & BOWIE, for appellant.—It is necessary to
a good cause of action, under subdivision 5, section 3910
of the Code, that the complaint allege that the servant
or employee was employed in and about a railway.—*Ala-
bama Steel & Wire Co. v. Griffin,* 149 Ala. 433; *Wood-
ward Iron Co. v. Curl,* 153 Ala. 215; *Pear v. Cedar Creek
Mill Co.,* 156 Ala. 263. A tram track in a coal mine upon
which mine cars are operated is not a railway, within
the meaning of subdivision 5, section 3910 of the Code.—
*Woodward Iron Co. v. Curl,* 153 Ala. 215.   A servant or
employee who quits his place of business in a mine and
goes to another part of the mine for purposes of his own,
not connected with the master's business, is not entitled
to recover of the master for injuries sustained by him
while so away from his place of duty.—*Pioneer M. & M.
Co. v. Talley,* 43 South. 800, 12 L. R. A. (N. S.) 861 and
note; *McDaniel v. H. A. & B. R. R.,* 90 Ala. 64; *Ells-
worth v. Matheney,* 51 L. R. A. 389; *Wright v. Rawson,*
52 Iowa 329; *I. & N. R. R. Co. v. Hocker* (Ky.) 6 4S. W.
638; *Wise v. Ackerman,* 76 Md. 375. The damages which
a plaintiff may be entitled to recover in a case of this
kind are wholly compensatory and the burden was on
the plaintiffs to furnish data to reasonably satisfy the
jury of the amount they are entitled to recover.—*A. G.
S. R. R. Co. v. Hall,* 105 Ala. 599; *L. & N. R. R. Co. v.
Orr,* 91 Ala. 548; *James v. R. & D. R. Co.,* 92 Ala. 231;
*McAdory v. L & N. R. R. Co.,* 94 Ala. 272; *Reiter-Con-
nolly Mnfg Co. v. Hamlin,* 144 Ala. 192.

[Woodward Iron Co. v. Lewis.]

STALLINGS & DRENNEN, for appellee. In order for the plaintiff to recover under subdivision five of section 3910, Code of 1907, *it is not necessary* for the pleadings and proof to show that at the time the intestate was injured he was employed in and about a railway or railroad.—Section 3910 of Code of 1907; *Pear as admr. v. Cedar Creek Mill Co.,* 156 Ala. 263; *Ga. R. etc. Co. v. Miller,* 16 S. E. 939; *Ga. R. etc. Co. v. Hicks,* 95 Ga. 301; *Ga. R. etc. v. Brown,* 86 Ga. 320; *Ga. R. etc. Co. v. Ives,* 73 Ga. 499; *Mott v. So. Ry Co.* 131 N. C. 388; *Sigman v. So. Ry. Co.* 47 S. E. 420; *Callahan v. St. L. M. B. etc. Co.,* 60 L. R. A. 249; *Ind. U. R. Co. v. Houlihan,* 157 Ind. 494; 47 Wis. 138 (2 N. W. 69); *Williams v. Iowa C. Ry. Co.,* 121 Iowa 270; *Pierce v. Central I. Ry. Co.,* 73 Iowa 270; *Keatley v. Iowa Cen. R. Co.* 94 Iowa 685; *McKnight v. Iowa etc. Co.* 43 Iowa 406; *Cannon v. C. etc. Co.,* 101 Iowa 613; *Akson v. Chicago etc. R. Co.* 106 Iowa 54; *Sthroeder v. St. C. R. etc. Co.* 47 Iowa 375. An electric motor on a railway in a mine is within the meaning of sub-division five of section 3910, of the Code of 1907.—*B. R. L. & P. Co. v. Mosely,* 51 South. 424; *Kline v. Minn. Iron Co.,* 100 N. W. 68; *Schus v. Power-Simpson Co.* 69 L. R. A. 887; *Savannah T. v. Williams,* (Ga.) 61 L. R. A. 249; *Birmingham So. R. R. v. Powell,* 136 Ala. 232; *Ensley Ry. Co. v. Chewning,* 93 Ala 24; *I. & N. R. R. v. Anchors,* 114 Ala. 492. Labatt on Master and Servant, Sec. 722. A child between the age of seven and fourteen years is prima facie incapable of being guilty of contributory negligence and a plea setting up the same must allege that the child was capable of exercising judgment and discretion and the mere fact that the child might have been killed while he was at a place other than where his duties required him to be, does not defeat a right to recover nor relieve his employer from any duty to him at that place.—*Tutwiler C. C. & I. Co.*

*v. Enslen admr.* 129 Ala. 336. "A plea to an action for the death of a child under the age of fourteen years setting up a violation of a rule of the master, as a bar to the action, is bad."—*A. G. S. R. R. Co. v. Bonner,* 39 South 619 (Ala.) It is the duty of the master to warn the servant against perils arising from the manner in which instrumentalities are affected by isolated events which occur at more or less frequent intervals during the performance of the servant's work and the master is bound to see than no order with respect to change of position of the subject of the work shall be executed without due warning to the employee—This principle is common in injuries produced by some heavy object which passes at intervals along certain lines through the place in which the servant is required to work.— Volume 1, Sec. 209, Labatt on Master and Servant. "The duty of warning and instructing a servant is a primary duty of the master and the delegation of such duty to another servant either higher or lower in the scale of employment, than the one exposed to danger, cannot relieve him of the responsibility imposed on him by law." —26 Cyc. page 1167 (b).

MAYFIELD J.—This action is under the employer's liability act, to recover damages for the wrongful death of a servant, who was a minor not quite 14 years of age. Intestate was employed by defendant to work in its coal mine. He was employed to throw switches for the passage of cars upon a tram track in the mine. He was killed by one of the cars becoming derailed and striking or passing over him. He had been employed in the mine for about 2½ years before the accident, and had been at this particular work of throwing switches for about 2 months prior to his death. He was therefore to some extent familiar with the mine and with the track and with the cars which injured him.

[Woodward Iron Co. v. Lewis.]

The first error insisted upon is in overruling defendants demurrer to the third count of the complaint.

The reporter will set out this count, and the demurrer thereto, in his report of the case.

We do not think that the count was subject to any of the grounds of demurrer interposed. The count was good under the fifth subdivision of the employer's liability act. It alleged the relation of master and servant between defendant and intestate, and between defendant and the alleged negligent servant; and sufficiently showed that intestate and the alleged negligent servant were fellow servants. It also sufficiently alleged that the injury was caused by reason of the negligence of this alleged negligent servant, who was in the service of the master, and who had charge or control of an electric motor car or train upon a railway. In fact, it sufficiently alleged all the requisites of the statute to state a cause of action under the fifth subdivision of the statute in question, and therefore was not subject to the demurrer.

The count was sufficient under the rules announced in *Griffin's case,* 149 Ala. 423, 42 South. 1034, in *Curl's case,* 153 Ala. 215, 44 South. 969, and in *Pear's case,* 156 Ala. 263, 47 South. 110.

Nor is it defective in the respect pointed out in *Whatley's case,* 132 Ala. 118, 26 South. 124, and in *Mobley's case,* 139 Ala. 434, 36 South. 181.

The court erred, however, in sustaining the demurrer to plea No. 9, as amended. The plea was amended as follows: "(9) That, at the time of the injury to plaintiff's said intestate, there was in force a rule in said mine promulgated by defendant prohibiting plaintiff's said intestate and other latch boys employed in said mine from riding the trips of cars on the slope of said mine, which was known to plaintiff's said intestate, and plain-

tiff's said intestate in violation of said rule left his place of work in said mine and rode a trip of cars a short distance up said slope and got off said trip while it was in motion in front of a trip of cars coming down said slope, and was struck and injured as a proximate result thereof. Plaintiff's said intestate, knowing, at the time that he violated said rule as aforesaid, that it was dangerous for him to get off said trip in way that he did, and that he was liable or likely to be struck by a trip of cars coming down said slope, and as a proximate consequence of said act on his part he was struck and injured as aforesaid."

If the matters set forth in this plea were true (and on demurrer they must be so treated) they constituted a perfect defense to each of the counts of the complaint upon which the trial was had.

This plea was sufficient, notwithstanding the complaint alleged that intestate was a minor under 14 years of age.

The rule set up shows itself to be reasonable. The plea averred that the rule was promulgated, that it was applicable to intestate, that he knew the rule, and that he violated it, that he knew that it was dangerous to violate the rule in the manner in which he is alleged to have so done, and that his injury or death was the proximate result of his having so violated the rule of his master. This is all the law or rules of good pleading require the plea to set up.

It is inconceivable how the master could be liable, under the complaint as for simple negligence, if the matters set up in that plea were true. The plea met all the conditions necessary to a good plea, on account of the minority of the intestate; that is, that the rule was reasonable, that it applied to him, that he knew it and appreciated the danger of violating it, and that with such

knowledge and appreciation he violated it, and was injured in consequence thereof.

It is not only the right of the master to adopt and promulgate reasonable rules for the conduct of his business, but the law makes it his duty so to do, so far as is reasonably necessary and proper to subserve the safety of his servants in the discharge of their duties. Mr. Labatt says: "One of the main purposes of a rule being [is] to place servants in possession of certain information which they are not in a position to acquire by their own unaided observation," etc. Master and Servant, vol. 1, § 212.

It is likewise the duty, as well as the right, of the master to inform the servant of the rule, in order that it may both bind the servant and conserve his safety. It it also the law that a servant who violates a reasonable rule of the master, and which is promulgated for his guidance and protection, is guilty of contributory negligence. Labatt, Master and Servant, vol. 1 §§ 225, 365.

While it is true that the duty of the master to warn the servant of dangers is stricter in cases where the servant is a minor than where he is an adult, and that a warning which is sufficient for an adult may not be sufficient for a minor, and while the necessity and duty to warn do depend also upon the age, experience, and intelligence of the particular minor to be warned, yet this plea alleges that the minor was warned by the rule, that he knew the rule, and appreciated the danger attending its violation, and, notwithstanding this, he violated the rule and was injured in consequence thereof. This was sufficient though the intestate was a minor under 14 years of age at the time of the injury.

If, as contended by the plaintiff, intestate was not of sufficient age, understanding and experience to know or comprehend the rule, or to appreciate the danger of vio-

lating it, these were made triable issues under the plea. If the rule was habitually violated by the servants (with the knowledge of the master), and to such an extent as to abrogate or nullify it (as is contended), this was a subject for an appropriate replication; it was not the office of the plea to negative these facts.

The difficult question—the important one—in this case, is whether or not the tramway used by defendant in its ore mine, as shown by the undisputed evidence, is a railway, within the meaning of the fifth subdivision of the employer's liability act. It was a tramway laid in the slope of the mine, upon which tram cars were run for the purpose of transporting ore from the bottom of the slope or mine to the top or to the tipple where the cars were dumped. The cars were operated by means of electric motors, and the tracks had switches by means of which the cars were passed from one track to another. The duty of the intestate was to throw the switches or latches, so that the cars could pass from one track to another. The negligent servant, as denominated in the third count, had the control or management of an electric motor which moved the cars upon the track.

The complaint, or the third count thereof, did not allege that the electric motor was on a tramway, but followed the words of the statute and alleged that it was upon a railway; but the evidence disclosed indisputably that it was a tramway, as above described, so the question is: Was it a railway within the meaning of the fifth subdivision of the act?

It was said, though not decided, in *Curl's case,* 153 Ala. 215, 44 South. 969, that a tram track used in connection with an ore mine and for transfering ore from the mine to the tipple, was not a railway within the meaning of said fifth subdivision.

Mr. Dresser, in his work on Employer's Liability (volume 1, § 80 p. 349), says, in defining the phrase "upon a railway"; "The courts have confined all words of this section, as well as those under discussion, to the kind of railroad the Legislature must have had in mind.

It has been held in this state that a "hand car" propelled by a lever, if upon an ordinary railroad, is within this subdivision (*Crocker's case,* 95 Ala. 412, 11 South. 262); but also (*Whatley's case,* 122 Ala. 118, 26 South. 124) that a servant in charge of a stationary engine at the mouth of a coal mine, used for the purpose of drawing tram cars out of the slope of the mine by means of a cable, is not within the fifth subdivision of the employer's act.

In *Mobley's case,* 139 Ala. 425, 36 South, 181, it was held that a complaint that alleged that the defendant was operating a locomotive and a switch engine in the handling of material for its furnace, and that the negligent servant who caused the injury was the engineer who had charge or control of said switch engine, set up no sufficient averment that the engine was upon a railway.

In *Curl's case,* 153 Ala. 230, 44 South. 969, a case in which the injury was caused by a car on a tram track used for hoisting and transporting ore from the bottom of the mine to the tipple, it was said: "It would seem (from what was said in *Griffin's case,* 149 Ala. 423, 42 South. 1034) that the car was not one on a railway; but it is still clearer from the evidence that the plaintiff at the time was not employed in and about the railway," etc.

The *Griffin case* had to do with this last feature— that the servant must be employed in or about a railway —and not with the question whether a tram track is a "railway" within the meaning of subdivision 5 of the act.

It was also held (*Freeman's case,* 137 Ala. 481, 34 South. 612) that an engineer operating an engine which was attached to, and moved a steam shovel which was used in mining ore, was not within said subdivision.

It was held by the English court that the term "railway" did not include a "tramway," though used in connection with, and as a part of, a railway owned by the same company. This case, however, was one construing an act of Parliament assessing railway and canal property, and not the English employer's act from which our act was taken.—*Swansea Co. v. Swansea Sanitary Board* 10 B. 357 (1892).

But it is pointed out in the work of Roberts & Wallace, on the Duty and Liability of Employers, that this same kind of tramway—in fact, the very one by name ("Swansea tramways") is given as an example—might not be a railway in the sense implied in some statutes, but would certainly be such in the sense in which "railway" is used in the fifth subdivision of the English employer's act, pages 291, 292. The reason assigned is that the Swansea tramways were constructed to form junctions with railways.

So a tramway may be a railway in the sense in which it is used in one statute, and not a railway as employed in another; and, as further pointed out in the work, one tramway may be a railway under the employer's act, while another would not.

So, in our own state, a street car line operated between Ensley and Birmingham, and employing dummy engines for tractive power, was held to be a railroad within the meaning of the statute requiring railroad companies to bring trains and cars to a stop before crossing another railroad.—*Birmingham Mineral Railway Co. v. Jacobs,* 92 Ala. 187 9 South. 320, 12 L. R. A. 830. But this decision was by a divided court; Stone, C.

J., and Clopton, J., dissenting upon this proposition, and the majority opinion limiting its effect to street railways not wholly within a municipality and under municipal control.

Likewise, in the case of *Louisville & Nashville Railroad Company v. Anchors,* 114 Ala. 492, 22 South. 279, 62 Am. St. Rep. 116, it was decided for the first time that an electric street railway running between Oxford and Anniston was a "railroad" within the meaning of the statute last indicated.

In these cases, and in others, it is decided that the controlling question is: Was the device or way under consideration within the contemplation of the Legislature in passing the statute? The opinions in these cases hold that a street railway—no matter by what power the cars are propelled—may be a railroad within the meaning of one statute, and not within the meaning of another; that one street car line might be a railroad, within the purview of the statute, while another might not.

The question whether an electric street car line is a railway within the contemplation of the fifth subdivision of the employer's act seems not to have been raised until the case of *Moseley,* reported in 164 Ala. 111, 51 South. 424. At any rate, the writer recalls no other cases involving this point. But many actions against electric street car companies have been brought under this subdivision, and sustained by this court. And the statute is now amended by adding "electric motor" thereto. This amendment was clearly intended to include electric street railways, for otherwise the "electric motor" could have no field of operation; it being known of all men that no ordinary commercial railroad in this state now uses, or at the time of the passage of the amendment used, electric motors as the motive power, or otherwise, except for lighting the cars or engines, while such motors

were then, and are now, of common use on street railways.

This subdivision of the statute now reads as follows: "(5) When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has the charge or control of any signal points, locomotive, engine (electric motor), switch, car, or train upon a railway, or of any part of the track of a railway."

Each term used in this subdivision, such as "signal," "point," "engine," "car," and "electric motor," must be considered in connection with the context, and not as an isolated term. As is said by the text-writers on the subject of the English employers act, "upon a railway" is the keynote to the subsection, because it applies to and qualifies each of the terms. This court has taken the same view of our act, which is merely a copy of the English statute. This court has uniformly held that a count under this section, to be sufficient, must allege directly, and not leave it to inference, that the engine, car, train, etc., was "upon a railway"; but, unless the *Curl case* decided it, it has never been decided that a "tramway" is not a railway" within the meaning of this subdivision.

There are some tramways that would, we think, clearly be railways within the meaning of this subdivision, such as tramroads used in connection with sawmills, upon which ordinary railroad locomotives and cars are operated, and which are used as spurs, to or junctions with, the ordinary railroads.

In deciding whether or not the tram way under consideration is a railway within the meaning of this subdivision, the object and purpose of the employer's act, and that of this particular subdivision, must be looked to and heeded. The act was for the benefit of the servant. It did not, however, create any new cause of ac-

[Woodward Iron Co. v. Lewis.]

tion; it merely added a remedy against the master, as well as against the negligent servant, in the cases which are within the statute. If the injured servant has no action against the negligent servant at common law, he has none against the master under the statute. It does not give an absolute right of action, but merely removes one defense, by placing the injured servant in the position of one of the public, where he is injured by the negligence of a fellow servant, within the cases covered by the statute. The act does not deprive the servant of any right of action which he had at common law.

The negligent servant under this subdivision may be a superintendent, so as to bring his negligence under the second; or he may be one whose orders the injured servant must obey, and therefore bring it within the third subdivision; or he may be charged with the duty to see after the condition of the ways, works, etc., and therefore bring his negligence within the first subdivision.

It must also be borne in mind that this act, unlike statutes requiring trains to stop at crossings, and to ring the bell or blow the whistle on approaching crossings, stations, etc., is not dealing with the rights of, or duties to the public, but only with the private rights and duties of the master and of his servants.

Neither the plant nor the railway need be a public one, to be within the statute. A private railway is as much within the statute as a public one. It extends to side tracks and switches as well as to the main line. Under our statute it is now immaterial whether the motive force is steam or electricity. It is immaterial whether the engine is a dummy, or is a mogul, passenger, or a freight engine, or a switch engine, if it is "upon a railway."

On the other hand, it makes no difference what kind of an engine it does not apply, unless it is "upon a railway." It does not apply to traction engines nor to steam shovels which are not "upon a railway." The same is true as to an electric motor; it must be upon a railway, and so must the train, the car, or the switch. The gauge of the railway is immaterial; it may be narrow, standard, or broad—each is within the statute if the way is a railway. Nor does the length of the way, if it is a railway, have anything to do with the bearing of the statute.

The authorities all say that it is impracticable to lay down any abstract rule as to what is, and what is not, a railway. The distinction between some tramways and some railways is very slight, while that between others is very great and marked. Whether the former may be included in the latter, in a given case must of necessity depend upon the facts of the concrete case, and not upon an abstract definition.

The New York court held that a tramway in the ordinary use of the word, means a railroad or a railway over which cars are operated.—*Gough v. Jewett,* 32 App. Div. 79 52 N. Y. Supp. 709.

It has been held in Massachusetts, however, that an electric car is not a "locomotive engine or train upon a railroad," though the same court held that, possibly, where the motive power has been changed in part or altogether, from steam to electricity, such car would come within the purview of the Massachusetts employer's act.—*Fallon v. West End St. Ry. Co.,* 171 Mass. 249, 50 N. E. 536.

Our statute, however, has been amended, so as to resolve the question expressly including electric motors.

We have examined many authorities, textbooks and adjudged cases (both English and American), on the

subject, and we confess that it is a question not free from difficulty whether the tramway in question is a railway within the meaning of the fifth subdivision of the employer's act; but looking at the subject-matter and the parties with which the act deals—that is, with the master and the servant, inter se—and the fact that the enactment is remedial, we are inclined to hold that a no more restricted meaning should be placed upon this statute than is consistent with the natural and popular sense of the word.

And considering other questions, to do which we have authority, such as: That the track or way need not be public; that, though private, it is within the statute; that it need not be permanent, but may, if merely temporary, be sufficient; that the questions of width and length have no bearing; and that the motive power for the propulsion of the cars, provided they are on a railway, has no determinative effect—we hold that the tramway in question is a railway, within the meaning of the statute, and that the court did not err in refusing the general affirmative charge to the defendant as to the third count.

There was some evidence in this case tending to show that the track was defective and that the injury resulted therefrom; consequently, the court did not err in refusing charges which authorized a verdict upon the theory that there was no such evidence, nor in giving those charges which authorize a recovery upon this theory of the case, if the charges were otherwise good.

. The evidence was in dispute as to whether intestate had wrongfully left his place of duty, or whether he was authorized to leave it when he did so, and therefore as to whether he was within the protection of the statute while returning to his place of duty, when he was injured. Such being the case, there was no error in the

court's declining to take this question from the consideration of the jury and to direct a verdict for the defendant upon this theory of the defense.

The trial court, in its charges to the jury, however, failed to make the distinction between contributory negligence and the assumption of risk as depending upon the minority of the intestate. While both contributory negligence and assumption of risk may to some extent depend upon the age, capacity, and intelligence of the servant, the rules are not the same in all cases; and a servant might not be chargeable with contributory negligence on account of his age or capacity, yet he may have assumed the risk by virtue of his employment, and by knowledge of the ordinary risks or dangers of the employment. The trial court seems to have used the terms interchangeably—as if there was no difference on account of the age of the interstate. In this there was error.

As the case must be reversed, we deem it unnecessary to pass upon questions touching the refusal of a new trial, or upon those which may not arise on another trial.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.