(77 South. 400)

## WOODWARD IRON CO. v. HUBBARD.
(6 Div. 499.)

(Supreme Court of Alabama. Dec. 20, 1917.)

MASTER AND SERVANT ☞180(2, 3)—"RAILWAY"—"ANY PART OF TRACK OF RAILWAY."

A track 300 to 400 feet long, made with steel rails 20 to 25 feet apart, used exclusively for moving a "coke pusher machine," mounted on wheels operated by electric motor and used for leveling, from oven to oven, is not a "railway," nor "any part of the track of a railway," under Employers' Liability Act (Code 1907, § 3910, subd. 5), since it is neither used nor intended to be used for the transportation of products, freight, or passengers.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Railroad —Railway.]

Gardner, Somerville, and Thomas, JJ., dissenting.

Appeal from City Court of Bessemer; J. C. B. Gwin, Judge.

Suit by H. A. Hubbard against the Woodward Iron Company for damages for personal injuries. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Cabaniss & Bowie, of Birmingham, for appellant. Charles A. Calhoun and John T. Glover, both of Birmingham, for appellee.

PER CURIAM. A full statement of the facts necessary to an understanding of the question here treated is found in the dissenting opinion of Justice GARDNER, and such statement of facts is here adopted by reference thereto, without being here repeated.

The majority are of the opinion that the track upon which the "coke pusher machine" in question was operated is not a "railway," nor "any part of the track of a railway," within the meaning of subdivision 5 of the Employers' Liability Act (Code 1907, § 3910 [5]). The question was discussed at some length, and many decisions and text-books were reviewed and cited, in the case of Woodward Iron Co. v. Lewis, 171 Ala. 233, 54 South. 566. It was there held that a tram track, used for the purpose of transporting ore which was being mined, was a "railway," within the meaning of this subdivision. We did not decide in that case, nor did we mean to say as dicta, that every track or tramway, used by a master in his business, upon or over which any machine is moved by means of a steam locomotive or electric motor, would be a railway, within the meaning of the statute in question. In fact, several cases were cited approvingly in which it was intimated, if not decided, that all tracks or ways on which machinery is operated by the master, even by means of steam engines and electric motors, are not "railways," or "any part of the track of a railway," within the meaning of the statute. See Woodward Iron Co. v. Curl, 153 Ala. 205, 44 South. 974; Id., 153 Ala. 215, 44 South. 969; Sloss-Sheffield Steel & Iron Co. v. Mobley, 139 Ala. 425, 36

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

South. 181; Freeman's Case, 137 Ala. 481, 34 South. 612. It is true that these cases did not expressly decide that the tracks there in question, or a track like the one in question, is not a railway, or a part thereof, within the meaning of the subdivision in question; but they do show that this class of tracks was not by the court or by the parties considered to be such in those cases. Mr. Dresser, in his work on Employers' Liability (volume 1, § 80, p. 349), says, in defining the phrase "upon a railway":

"The courts have confined all words of this section, as well as those under discussion, to the kind of railroad the Legislature must have had in mind."

Each term used in this subdivision, such as "signal," "point," "engine," "car," and "electric motor," must be considered in connection with the context, and not as an isolated term. As is said by the text-writers on the subject of the English Employers' Act, "upon a railway" is the keynote to the subsection, because it applies to and qualifies each of the terms. This court has taken the same view of our act, which is merely a copy of the English statute. The track or way used by the master in his business, to come within the meaning of this subdivision, must be used or intended for the purpose of transporting or moving products, freight, or passengers, in connection with his business. It was never intended to include all tracks, ways, or rails, upon which any of his machinery is moved merely in its operation or transportation, as in the instant case. The track in question was not intended to transport any products, freight, or passengers, to or from the master's plant or place of business, but merely and exclusively for moving the "coke pushing machine" from one coke oven to another. If it had been used for transporting coal to the coke ovens, or for transporting the coke from the ovens, by means of tramcars propelled by steam engines or by electric motors, then the case of Woodward Co. v. Lewis, 171 Ala. 233, 54 South. 566, would be an authority for holding the track in question to be "a railway" within the meaning of the fifth subdivision of the Employers' Act. The track in this case was used, and intended to be used, as a part of the carriageway of one particular machine from one coke oven to another.

A tram track, on which logs are hauled to a sawmill and the lumber is hauled therefrom, by means of cars propelled or moved thereon by steam locomotive engines or electric motors, might be a railway, within the meaning of the statute; but the mere track or rails upon which the carriage moves the logs while they are being sawed are not a "railway," nor "a part of the track of a railway," within the meaning of the statute in question. Surely the track or way on which a steam shovel is moved while being operated is not a railway within the meaning of the statute; and, if it is not, then neither is the track here in question. It results that the judgment must be reversed. and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, and SAYRE, JJ., concur.

GARDNER, J. (dissenting). This cause was assigned to the writer, and the following opinion was prepared, but upon consultation of the whole court a majority did not concur, and their views are expressed in a separate opinion. I therefore adopt the following as expressive of my dissenting views:

Appellee (plaintiff in the court below) brought this suit against the appellant for the recovery of damages for injuries sustained while in the employ of defendant as a machinist and repair man at its by-product plant. The case was submitted to the jury on three counts, designated A, D, and E; but the question here involved only concerns count A, which will appear in the report of the case. Under said count recovery was sought under subdivision 5 of the Employers' Liability Act, which we, for convenience, here quote:

"When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has charge or control of any signal, points, locomotive, engine, electric motor, switch, car, or train upon a railway, or of any part of the track of a railway."

Counsel for appellant insists that the affirmative charge was due the defendant under count A of the complaint, for the reason that the railway or track of the railway disclosed by the evidence in this case was not such a railway as is meant and intended by subdivision 5 of the Employers' Liability Act. This is the sole question presented by this appeal, and requires a brief review of the evidence.

Plaintiff was a machinist and a repair man. One Costner operated what is called the "coke pusher machine," which was moved by electricity on rails like a large railroad track. Costner gave the signal for the repair man, and plaintiff in response went upon the pusher machine to repair the defective part, and while standing upon a platform on the machine, consisting of a board (as testified by the plaintiff) 6 inches wide, Costner, who operated the machine from the cab, gave the machine a sudden start (according to the evidence of the plaintiff) and without warning, thereby causing plaintiff to lose his balance and fall to the concrete pavement some 20 feet below, resulting in the injuries here complained of. The evidence in regard to the question of negligence on the part of Costner was in dispute, and submitted to the jury for determination.

The coke pusher machine is structural iron work between 25 and 30 feet high, about 12 or 15 feet in width, and about 35 feet in

length, was on wheels about the size of ordinary railroad car wheels, except that each wheel had two flanges, instead of one. This machine was operated by electric motive power on rails, like a large railroad track; they were steel rails, and built like railroad rails. The length of the track is estimated to be about 300 to 400 feet, and the track runs along in front of the ovens, and between the rails is a concrete pavement. The pusher machine moved up and down this track, pushing the coke and leveling the ovens. The machine was operated in front of the ovens, being run from one of them to another on this railroad track. It had what is called a "rammer" and also a leveling bar; the latter being used for leveling the coke in the ovens, and the rammer for pushing it out on the other side. The machine was also used for taking the doors off the ovens, and then moving the coke from the ovens. The leveling bar ran over rollers on the machine, and would be run through the oven and pulled back over these rollers. There was an electric motor on the machine, used, of course, for the purpose of operating the same, and this motor was situated close to the front of the machine. Plaintiff received his injuries at the time Costner was in the cab of the machine operating the same by means of this electric motive power. This machine could be operated at a speed, variously estimated by the witnesses, from 2½ to 5 miles per hour. The record contains photographs of the machine, five in number, affording much information as to its size, the track upon which it was operated, as well as its manner of use.

That the pusher machine here involved comes within the provision of said subdivision 5 of the Employers' Liability Act is not questioned, but it is insisted that the track upon which the same is operated is not a railway, within the meaning of said subdivision. As recognized by this court in Woodward Iron Co. v. Lewis, 171 Ala. 233, 54 South. 566, it is impracticable to lay down any abstract rule as to what is and what is not a railway. A definition of a "railroad" or "railway" in Rapalje and Lawrence, Law Dictionary, vol. 2, is as follows:

"A road specially laid out and graded, having parallel rails of iron or steel for the wheels of carriages or cars, drawn by steam, or other motive power, to run upon."

One of the definitions of "railway" found in Webster's New International Dictionary is "A line of rails or track providing a runway for wheels." There are, however, numerous definitions varying with the different connections with which the term is used in statutes, contracts, or conveyances, which are found noted in 33 Cyc. pp. 33–36, inclusive; also page 1406. That the track upon which was operated the pusher machine here referred to was a railway, or a part of the track of a railway, within some of the definitions of that term, we think is very clear. We are concerned, however, with its meaning under a proper construction of subdivision 5 only.

The Employers' Liability Act of this state, copied from the English statute, was passed for the benefit of the servant, and is remedial, and should be construed so as to advance the remedy. Boggs v. Ala. Con. C. & I. Co., 167 Ala. 251, 52 South. 878, 140 Am. St. Rep. 28. Speaking of the statute, and as to whether or not the same should be given a strict or liberal construction, the Appellate Court of Indiana used the following language, which we think here appropriate:

"With respect to the English act of 1880, the rule of construction has been stated by Brett, M. R., in Gibbs v. Railway Co., 12 Q. B. Div. 208, 211: 'This act of parliament having been passed for the benefit of workmen, I think it to be the duty of the court, not to construe it strictly as against the workmen, but in furtherance of the benefit which it was intended by parliament should be given to them, and therefore as largely as reason enables one to construe it in their favor, and for the furtherance of the act.' The purpose of the Legislature in enacting the law was to remove what was regarded as an evil. The purpose was to protect employés from the negligent movement of engines along the tracks of railways. Prior to its passage the injured parties were without legal remedy, because those in charge of the engines were fellow servants. The Legislature will be presumed to have had in mind not details in the construction of the engine, but a machine of the same general character, effecting practically the same results, used in the same way, and subjecting the employés to the same dangers." Jarvis v. Hitch, 65 N. E. 608.

See, also, 5 Lebatt's M. & S. (2d Ed.) § 1666. And the following English authorities are also of interest in connection with the question here involved: Cox v. Gt. West. Ry. Co., 9 Q. B. Div. 106; Doughty v. Firbank, 10 Q. B. Div. 358; Gibbs v. Gt. West. Ry. Co., 12 Q. B. Div. 208; Walsh v. Whiteley, 21 Q. B. Div. 371.

This state, in its later decisions, construing said subdivision, has shown decided inclination to the liberal construction of the statute, as evidenced by the following cases: Woodward I. Co. v. Lewis, supra; Boggs v. Ala. Con. C. & I. Co., supra; Woodward I. Co. v. Sheehan, 166 Ala. 429, 52 South. 24; W. U. T. Co. v. Howington, 73 South. 550.[1] In the latter case it was held that the fifth subdivision protected employés when the master, as a mere licensee, was in the use of the track of a railroad upon business in no way connected with that of the owner or operator of the said railroad. Several of our cases are there reviewed. In Woodward I. Co. v. Lewis, supra, it was held that a tramway used in an ore mine was a railroad within the meaning of said subdivision. In our opinion, the reasoning in that case is decisive of this. The tramway in that case was laid in the slope of the mine, upon which tramcars were run for the purpose of transporting ore from the bottom of the slope to the top, or to the tipple where the cars were dumped. The cars were operated by means of an electric motor. In deter-

[1] 198 Ala. 311.

mining the question as to whether or not the tramway was a "railway," within the meaning of this subdivision, the court said:

"The object and purpose of the Employers' Act, and that of this particular subdivision, must be looked to and heeded. The act was for the benefit of the servant. * * * It must also be borne in mind that this act, unlike statutes requiring trains to stop at crossings, and to ring the bell or blow the whistle on approaching crossings, stations, etc., is not dealing with the rights of or duties to the public, but only with the private rights and duties of the master and of his servants. Neither the plant nor the railway need be a public one, to be within the statute. A private railway is as much within the statute as a public one. It extends to side tracks and switches, as well as to the main line. Under our statute it is now immaterial whether the motive force is steam or electricity. It is immaterial whether the engine is a dummy, or is a mogul, passenger, or a freight engine, or a switch engine, if it is 'upon a railway.' * * * The gauge of the railway is immaterial; it may be narrow, standard, or broad—each.is within the statute if the way is a railway. Nor does the length of the way, if it is a railway, have anything to do with the bearing of the statute. * * * Looking at the subject-matter and the parties with which the act deals —that is, with the master and the servant, inter se—and the fact that the enactment is remedial, we are inclined to hold that a no more restricted meaning should be placed upon this statute than is consistent with the natural and popular sense of the word. And, considering other questions, to do which we have authority, such as: That the track or way need not be public; that, though private, it is within the statute; that it need not be permanent, but may, if merely temporary, be sufficient; that the questions of width and length have no bearing; and that the motive power for the propulsion of the cars, provided they are on a railway, has no determinative effect—we hold that the tramway in question is a railway, within the meaning of the statute, and that the court did not err in refusing the general affirmative charge to the defendant as to the third count." Woodward Iron Co. v. Lewis, supra.

In the instant case, the track, upon which the pusher machine was operated, was composed of heavy rails laid parallel, with concrete pavement between them. The pusher machine was operated up and down this track on wheels similar to those of railroad car wheels, with. the single exception that they had flanges on each side, instead of a flange only on one side. The fact that the rails were as much as 20 or 25 feet apart, or that the track was not more than 400 feet in length, can, under the decision of the Lewis Case, supra, have no material effect upon the question here to be determined. The question of width and length is without bearing, and it is, of course, no objection that it was a private track; nor can it be objected that the pusher machine did not haul freight or pull cars. In Woodward Iron Co. v. Sheehan, supra, count 1 of the complaint (held by this court to be sufficient) showed that a mass of iron or slag was being moved by means of a cable or rope and a locomotive engine. Here coke in the ovens was leveled by means of this pusher machine, and was also extracted from the ovens by the same machine pushing the coke out by means of what is called the rammer; the machine, however, first removing the doors from the ovens.

As previously stated, the Employers' Liability Act was passed for the benefit of workmen, and this particular subdivision was for the protection of employés from the negligent moving of engines along the tracks of railroads; and, as said by the Indiana court in Jarvis v. Hitch, supra:

"The Legislature will be presumed to have had in mind, not details in the construction of the engine, but a machine of the same general character, effecting practically the same results, used in the same way, and subjecting the employés to the same dangers."

So, in the instant case, the same character of danger being present, to which the employé is subjected, and for whose benefit the statute is enacted, the Legislature will not be presumed to have had in mind the mere details as to construction of the track, its breadth or length, or as to whether or not it shall be of permanent or temporary use. Here the employé is subjected to the same danger from the negligent operation of this machine upon this track, less in degree, perhaps, somewhat, than upon a commercial railroad, but still of the same general character. The holding of the majority, in my opinion, practically repudiates the reasoning and logic of the Lewis Case, and passes without notice the Sheehan Case, supra.

I am of the opinion that the construction insisted upon by counsel for appellant, and here adopted by the court, is out of harmony with the rule of construction established for this statute by the authorities from this state above cited, and therefore conclude that the track here in question was a railway within the meaning of subdivision 5, and that the court below committed no error in refusing the affirmative charge as to count A. I think the judgment should be affirmed, and respectfully dissent.

SOMERVILLE and THOMAS, JJ., concur in the foregoing opinion.