[L. & N. R. R. Co. v. Morris.]

# L. & N. R. R. Co. *v.* Morris.

## *Damage for Injury to Servant.*

(Decided January 23, 1912.  Rehearing denied February 14, 1914.
60 South. 933.)

1. *Master and Servant; Injury to Servant; Complaint.*—A count stating that decedent's danger in being at work on the defendant's track at the place specified was known at the time to defendant's employees on an approaching engine, but that, notwithstanding such knowledge, they negligently permitted the engine to run against and kill decedent, sufficiently alleged subsequent negligence.

2. *Same; Master's Rules; Elimination of Count.*—Where one of the counts alleged negligence in that the engineer failed to keep a lookout, it was not error to admit in evidence one of defendant's rules requiring employees to exercise great care to avoid injury to themselves and others, especially in the switching of cars; nor could the court be put in error for admitting the rule by the elimination of such a count at a subsequent stage of the trial.

3. *Same; Jury Question.*—Whether or not the engineer in charge of the engine saw or was apprised of the fact that decedent was on the track in a place of danger in time to have prevented the accident, under the facts in this case, was a question for the jury.

4. *Appeal and Error; Review; Elimination of Interrogatories.*— Where it was distinctly stated in another part of the answer to the interrogatories that neither the fireman nor the engineer saw or knew that the deceased was on the track until after he was struck the defendant is not prejudiced by the striking out of an answer that the point where the accident occurred was on a curve and on this account and for the further reason that the tank on the engine was unusually broad and high, plaintiff was not visible to the engineer or the fireman.

5. *Death; Damages; Employee.*—Where the action was for the death of an employee the measure of damages was a sum not in excess of that which, at interest of 8 per cent. per annum for a term not exceeding plaintiff's life expectancy would amount annually to the sum decedent's dependent family would probably have received each year had he lived.  The jury being entitled to consider decedent's age, probable duration of life, habits of industry, business, health, skill, and reasonable expectation.

6. *Same; Excessiveness.*—Under the evidence in this case a verdict awarding the plaintiff eighteen hundred dollars was not excessive.

7. *Charge of Court; Construction.*—The oral charge of the court excepted to considered and held that when construed as a whole it was not erroneous.

APPEAL from Jefferson Circuit Court.

Heard before Hon. JNO. C. PUGH.

Action by A. C. Morris as administrator of the estate of Henry Readus, deceased, against the Louisville & Nashville Railroad Company for damages for the death of said Readus while in its employment. Judgment for plaintiff and defendant appeals. Affirmed.

TILLMAN, BRADLEY & MORROW and JOHN S. STONE, for appellant. The eighth count of the complaint was subject to the demurrer interposed.—*T. C. I. & R. R. Co. v. Smith,* 55 South. 170. The amendment to the eighth count does not help it any.—*R. & D. R. R. Co. v. Hammond,* 93 Ala. 182; *A. G. S. R. R. Co. v. McWhorter,* 156 Ala. 276; 145 U. S. 418; 135 S. W. 35; 18 S. W. 980; 123 S. W. 807; 133 S. W. 397. Track walkers and track laborers assume the risk incident to the running of trains, extra as well as regular.—65 N. E. 1047; 107 N. W. 452; 17 Atl. 7; *Woodward Iron Co. v. Johnson,* 150 Ala. 361; *Bryant v. A. G. S. R. R. Co.,* 155 Ala. 371. The court was in error in its charge as to the measure of damages.—*Burgess' Case,* 116 Ala. 509; *Land & Improvement Co. v. Campbell,* 121 Ala. 50; *L. & N. R. R. Co. v. Campbell,* 93 Ala. 350. In cases of this sort the theory is that those bringing the action have a pecuniary interest in the life destroyed and the amount of recovery is limited to such interest. —*Sou. Ry. Co. v. Blount,* 131 Ala. 598.

BLACK & DAVIS, for appellee. The count questioned is an exact copy of count two filed in the case of *L. & N. R. R. Co. v. Calvert,* 55 South. 812. There was no error in excluding the argumentative conclusion of the witness in answer to the interrogatories.—*Gibson v. Hatchett,* 24 Ala. 209; *Brantley v. Gunn,* 29 Ala. 387. There was no error in admitting the rules of the com-

pany in evidence.—*L. & N. R. R. Co. v. Thornton,* 23
South. 781. Charges must be construed as a whole and
if when so construed they are correct the court will not
be put in error for erroneous sentences or parts of the
charge.—*L. & N. R. R. Co. v. Bogue,* 58 South. 393.
The question as to whether or not the engineer knew
of the position of deceased at the time of the accident
was one for the jury.—*L. & N. R. R. Co. v. Banks,* 31
South. 572.

DE GRAFFENRIED, J.—Henry Readus, while in
the employ of the defendant (appellant here), and
while at work on one of defendant's tracks in its yards
at Boyles, in Jefferson county, was struck by a locomo-
tive and killed. There were two tracks close to and
parallel with each other. Readus, who was a section
hand, but who for some time had been detached from
his crew, was at work on one of these tracks. A loco-
motive came in his direction on the track on which he
was at work, and to avoid this locomotive he stepped
from that track onto the other track, and began to
work on this latter track. He was in a stooping posi-
tion, and while in that position was struck and killed
by another locomotive, which was traveling slowly on
this latter track. Readus had his back to the locomo-
tive which killed him, and we think that all the evi-
dence shows that he was oblivious of the approach of
the locomotive until he was struck, or until about the
instant that he was struck by it. The locomotive which
killed Readus was backing slowly, and had attached
to it only its tender or tank. Some of the evidence
tends to show that this tank or tender was a foot
wider—six inches on each side—than the locomotive,
and was, of course, between the locomotive and Readus,
and Readus was, in fact, killed by one of the wheels of

the tank or tender. At the time of the injury the loco-motive was in charge of an engineer, who was assisted by a fireman.

The evidence is in some confusion as to the length of time Readus had been on the track on which he was killed, before he was struck. Some of the evidence tends to show that the two locomotives were in close proximity to each other, and that Readus, in getting out of the way of one of the locomotives, unconscious-ly walked and stopped almost in front of the other; while some of the other evidence tends to show that he had been at work for an appreciable length of time on the track on which he was killed, before he was struck by the locomotive.

Two women were near him when he was killed, and they gave an outcry just before he was struck. They saw Readus when he went upon the fatal track, and both testify that he was in a stooping position when he was killed, and that his back was to the engine that killed him. Their testimony is corroborated by that of at least one other witness.

The engineer claims that he did not know that Read-us was on the track, or in a place of peril, until he was struck. The fireman testified that he saw Readus be-tween the two tracks when they were approaching him, and were six or eight car lengths from him. He did not testify that he saw him on the track.

Readus seems to have been familiar with the situa-tion at Boyles, where locomotives were constantly switching; and he seems to have worked, for a long time, in the yards there. When at work in the yards, he acted upon his own initiative, and without direct orders from his superiors.

There was testimony tending to show that there was some curvature in the track at the point where Readus

was killed; but, as we understand the testimony, the yards were open and practically level.

The alleged width and height of the tank and the curvature of the track, taken in connection with the position of the engineer on the engine, are set forth in the argument for defendant as reasons in support of the engineer's claim that he did not see Readus before the locomotive struck him.

(1) There were several counts to the complaint. All of these counts, except count 8, were eliminated from the case before the case was given to the jury. Count 8 is a copy of count 2 in the case of *Louisville & N. R. Co. v. Calvert,* 172 Ala. 597, 55 South. 812. That count was, in that case, held to be good as a count charging subsequent negligence. The trial court therefore committed no error in overruling defendant's demurrer to count 8.

(2) The plaintiff, under the provisions of our statutes, filed interrogatories to the defendant, and those interrogatories were duly answered by the defendant. A part of the defendant's answer to interrogatory 3 was as follows: "The point where the accident occurred was a curve, *and on this account, and for the further reason that the tank on the engine was unusually broad and high, the plaintiff [decedent] was not visible to the engineer or to the fireman,* who were the only occupants of the engine." The court, on motion of the plaintiff, excluded the portion of the answer which we have above italicized, upon the ground that the same was an argumentative conclusion of the witness. Certainly a part of the answer excluded by the court— that part giving the reasons why the engineer and fireman did not see Readus—was subject to the plaintiff's objection; and as, in another part of its answers to these interrogatories, the defendant distinctly and

plainly stated that neither the fireman nor the engineer saw or knew that Readus was on the track until after he was struck, no injury could possibly have resulted to the defendant by reason of this ruling of the court.

(3) In the interrogatories to the defendant the plaintiff asked whether the defendant had a rule requiring engineers to keep a lookout while in yard limits, and called for a copy of such rule. In reply, the defendant attached its book of rules to its answers to the interrogatories, and the court, against the objection of the defendant, allowed the following from said book of rules to go before the jury: "Employees are required to exercise great care to avoid injury to themselves and others, especially in the switching of cars." When the above evidence was admitted, count 7, in which it is averred that the plaintiff's intestate came to his death because of the negligent failure of the engineer to keep a proper lookout while running his locomotive, was before the jury. As Readus was an employee of the defendant, and had a right to presume that its employees would obey its rules, this evidence was certainly relevant and material as applied to the averments of count 7; and the trial court cannot be put in error for admitting it, simply because, at a later stage of the trial, count 7 was eliminated from the case.—*L. & N. R. R. Co. v. Thornton*, 117 Ala. 274, 23 South. 778. This being the situation, it is unnecessary to discuss the question as to whether the said rule was admissible as evidence in support of count 8.

(4) The most important question in this case is whether there was evidence in the case from which the jury, as reasonable men, had the right to infer that the engineer saw Readus on the track or knew of his peril before the engine struck him, and in time to have

prevented the injury. The engineer testified that he
did not see Readus and knew nothing of his peril, until
after the engine struck him. The trial court charged
the jury that the plaintiff was not entitled to recover,
unless the engineer in charge of the locomotive actual-
ly knew of Readus' peril in time to have stopped his
engine before killing him. Was there evidence, then,
tending to show that the engineer, in spite of his denial,
did know of the peril of Readus before he struck him,
and in time to have prevented the injury? There was
evidence tending to show that the engine was moving
at a rate of speed not greater than three or four miles
per hour, and that by the use of emergency appliances
it could have been stopped in three or four feet. There
was evidence tending to show that the fireman saw
Readus when the locomotive was six or eight car
lengths from Readus. The fireman claims that Readus
was then between the two tracks; but there was other
evidence tending to show that at that time Readus was
at work in a stooping position on the track, and with
his back to the engine. In other words, that Readus
was then in a place of danger, and in such a position as
to indicate to the fireman that he was ignorant of or
indifferent to his danger. There was evidence tending
to show that if the fireman saw Readus in peril on the
track it was his duty to so inform the engineer. There
was evidence also tending to show that when the fire-
man claims that he saw Readus the engineer was also
looking down the track in the same direction. While
the engineer claims that, on account of the curve in the
track, his position on the locomotive, and the width and
the height of the tender or tank, he did not see Read-
us, the entire situation as developed by the evidence—
the physical facts—was before the jury. The engineer
was, in many ways, an interested witness. Under the

only count in the complaint upon which the plaintiff's case was finally submitted to the jury, it was necessary for the plaintiff to show that the engineer was the particular individual who knew of Readus' peril; and, so far as the bill of exceptions discloses, this engineer was the only person who was near the scene of the injury, except Readus, and who claims that he did not know of such peril, or who, at least, does not admit that he had seen Readus, just before the injury, at or near the track. There was, of course, evidence tending to corroborate the evidence of the engineer; but under all the evidence we think that the question as to whether he discovered or was informed of Readus' position on the track, and from that position knew, or should have known, that Readus was oblivious of or indifferent to his danger, in time to have stopped his engine and thus prevented the injury, was a question for the jury.

It must be remembered that in this case we are not dealing with a legal presumption of *negligence* which arises upon proof of a certain state of facts, and which presumption a defendant may *rebut by proof* of other facts. We are dealing with the question as to whether the engineer knew of deceased's peril, and whether there was evidence tending to show that he knew of such peril. As an illustration: When a plaintiff's evidence, in a proper case, shows that sparks emitted from a passing locomotive, set fire to and burned a stack of hay, the law, for the purpose of shifting the burden of proof, presumes that the fire was caused by the negligence of those in charge of the locomotive, or from some defect in the locomotive itself. This court has held that, as this is a mere *legal presumption,* the defendant may completely rebut it by proper evidence showing that those in charge of the engine were *not neg-*

*ligent,* and that the engine was properly equipped, etc., and that such a defendant, in such a case, may, upon such proof, become entitled to the general charge in his favor.—*L. & N. R. Co. v. Marbury Lumber Co.,* 125 Ala. 237, 28 South. 438, 50 L. R. A. 620.

If, however, the question in such a case was whether the engineer actually knew of the presence of the haystack, and there was evidence tending to show that the haystack was in an open country, near the track, and that the engineer was, when he was at or near the haystack, looking in the direction of the haystack, and the evidence further showed that it was his duty to look in that direction, then, in such a case, the question as to whether he actually saw the haystack would be controlled by the *facts* in the case, and not by those rules governing cases where, for the purpose of shifting the burden of proof, negligence is a mere legal presumption drawn by the law from the proof of certain facts, and which legal presumption may be by evidence legally overcome.—*L. & N. R. Co. v. Marbury Lumber Co., supra.* In such a case the question would be for the jury to say whether the engineer saw the haystack; and they would not be concluded by his sworn statement that he did not see it.

In the instant case, the law, under the facts, drew no conclusion, one way or the other, as to what the engineer did or did not know; and the question as to whether the engineer knew that the deceased was in peril before striking him, and in time to have prevented the injury, was left by the trial court to the only forum competent to pass upon it, viz, the jury.—*Holmes v. Birmingham So. Ry. Co.,* 140 Ala. 208, 37 South. 338.

(5) In addition to the above, there was evidence that the two women screamed when the engine was within four or five feet of Readus. The engineer claims that

he did not hear these screams, but the fireman admits that he heard them. There was evidence that the engine, by the use of proper appliances, could have been stopped within 3 or 4 feet. There was also evidence that the engine did not stop until it had traveled 20 or 30 feet after striking Readus. Under the doctrine of *L. & N. R. R. Co. v. Banks,* 132 Ala. 471, 31 South. 573, the plaintiff was, we think, entitled to have the case submitted to the jury.

(6) The court, in its oral charge to the jury, used the following language on the subject of damages: "The question of damages, gentlemen, is within your sound discretion as reasonable men. It is your duty to consider all of the evidence, condition in life, earning capacity, but not suffering or grief or bereavement, or any of those things; must be compensatory. *There is no way to measure the value of a life, and so the law leaves it within the sound discretion of 12 men, who have assumed the obligation to try the case upon all the facts."*

The defendant, at the conclusion of the charge, excepted to that part of it which we have above italicized. Thereupon the court further charged the jury as follows: "Now, I say, gentlemen of the jury, in that connection, the amount of damages recoverable for the death of a servant under the employer's liability act depends upon the life expectancy, health, strength, earning capacity, and so forth, of the intestate, Henry Readus, and what it would be worth to the distributees of his estate. The amount is not capable of definite, or even approximate, statement in evidence; but is to be found by the jury, as best they can, from all the evidence."

This latter statement of the court, which was intended to and which did qualify and explain that portion of the charge which we have italicized, was also ex-

cepted to by the defendant. We do not think that, as a whole, the above excerpts, taken together and explaining and qualifying each other, were bad. While, under the evidence in this case, the plaintiff's true measure of damages was a sum not in excess of that sum which, being put at interest at 8 per cent. per annum for not exceeding 22 years, would have amounted annually to that sum which the plaintiff's intestate's dependent family would probably have received each year from Readus, had he lived, the jury had the right to look to the "age, probable duration of life, habits of industry, means, business, health, skill, and reasonable expectations" of Readus in ascertaining *that* amount; and so we think that the law has not laid a hard and fast rule by which the jury shall, within the limits allowed by the law, fix the amount of such damages.— *L. & N. R. R. Co. v. Orr*, 91 Ala. 548, 8 South. 360; *L. & N. R. R. Co. v. Trammell*, 93 Ala. 350, 9 South. 870; *James v. R. & D. R. R. Co.*, 92 Ala. 231, 9 South. 335. Two men of the same life expectancy, but of opposite habits as to industry, skill, and reasonable expectations, might be receiving the same income, and both be killed at the same time, and yet the same jury might, within the limits allowed by the law, arrive at different conclusions as to the probable value of the life of each to his dependent families.

While the court, in the above-quoted excerpts used the word "discretion," we think that the context shows that the word "judgment" was intended, and that the jury so understood it.

(7) This case is, in so far as the damages are concerned, similar, in many ways, to the *Trammell Case, supra.* In that case the life expectancy of the deceased was about 27 years; while in the present case the life expectancy was 22 years. In that case the deceas-

ed's income, as in this case, was approximately $300 per annum. In that case the evidence showed that the deceased spent *all* of his money on his family. In the instant case there was testimony that *all* of the deceased's income was *not* spent on his family, but that he gave his wife a portion each month, and which portion represented a *surplus* over the monthly family expenses. In that case this court fixed the sum of $1,650 as the amount which should have been awarded the administrator. In the instant case the jury rendered a verdict in favor of the plaintiff for $1,800. Under all the evidence we cannot say that the verdict was excessive.

(8) While the question as to whether the engineer knew of Readus' peril in time to have prevented his death was, under the evidence, a close one, the jury, who had the witnesses before them, and who could observe their manner upon the stand, found that he did know of such peril. The trial judge, who also had before him the same evidence which the jury had, refused to disturb the verdict. We do not feel that, under the well-known rules which have been repeatedly laid down for our guidance, we should do so.

Let the judgment of the court below be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.