(87 South, 82)

## SLOSS–SHEFFIELD STEEL & IRON CO. v. BROOKS. (6 Div. 986.)

(Supreme Court of Alabama. Oct. 21, 1920. Rehearing Denied Nov. 18, 1920.)

1. **Master and servant** ⬅259(5)—**Count under statute for negligence of mining superintendent, causing injury to mine trackman, held sufficient.**

In an action against a mining company for death of its employee, count, based on Employers' Liability Act (Code 1907, § 3910, subd. 2) averring that, while plaintiff's intestate was employed by defendant as a helper to trackmen, he was run over or against by a car or cars on a track of defendant's railway, and so injured that he died, the injuries and damage being caused by reason of and as a proximate consequence of the negligence of a person in defendant's employ intrusted by defendant with superintendence, etc., *held* free from the grounds of demurrer directed to it.

2. **Master and servant** ⬅284(3)—**Whether statement of mine superintendent was order, a jury question.**

In an action against a mining company for death of its trackmen's helper when run over by a car or cars, whether the statement of defendant's superintendent to plaintiff's intestate, "Come on, boys, let's go," though not in the form of an order, was the order of such superior official to the intestate which the latter was bound to obey, *held* for the jury, under the evidence.

3. **Pleading** ⬅21—**Inconsistent issues may be presented by separate pleadings and replications.**

There may be inconsistent issues presented by separate pleadings and replications, and each referred to its own relative pleading.

4. **Master and servant** ⬅262(4)—**Submission of issues of fact under pleas of contributory negligence not error.**

In an action against a mining company for death of its trackmen's helper, defendant company's pleas of contributory negligence, being to the effect that plaintiff's intestate negligently went on the track when he knew a car or

cars were approaching, etc., and that he went on the track on which cars were being operated while they were rapidly approaching, *held* that the trial court did not err in submitting the issue of fact under such pleas to the jury.

Appeal from Circuit Court, Jefferson County; John C. Pugh, Judge.

Action by Mrs. Lois T. Brooks, as administratrix of the estate of A. H. Brooks, deceased, against the Sloss-Sheffield Steel & Iron Company, for damages for the death of her intestate employed in defendant's mine. From judgment for plaintiff, defendant appeals. Affirmed.

Tillman, Bradley & Morrow and E. L. All, all of Birmingham, for appellant.

A count under subdivision 2 should set forth the particular act of superintendence relied on. Count 4 is therefore subject to the demurrer. 183 Ala. 310, 62 South. 804; 201 Ala. 551, 78 South. 906; 2 Labatt, M. & S. § 687. Pate's order or direction to the intestate was not negligent. 192 Ala. 657, 68 South. 1008; 164 Ala. 131, 51 South. 377; 197 Ala. 108, 72 South. 341; 101 Ala. 309, 14 South. 10, 22 L. R. A. 361; 137 Ala. 481, 34 South. 612; 51 N. E. 1098; 171 Mass. 399, 50 N. E. 938; 56 Cyc. 1354; 85 Fed. 914, 29 C. C. A. 475; 1 Labatt, M. & S. § 347. Plaintiff's intestate was guilty of contributory negligence as a matter of law. 193 Ala. 392, 69 South. 480, Ann. Cas. 1917A, 576; 172 Ala. 560, 55 South. 218, and authorities next above. There was no wanton negligence shown. 169 Ala. 242, 53 South. 219; 142 Ala. 674, 38 South. 857. Having joined issue on an immaterial plea, and the plea being proven, the defendant was entitled to the affirmative charge. 132 Ala. 273, 31 South. 715; 112 Ala. 379, 21 South. 351.

Beddow & Oberdorfer, of Birmingham, for appellee.

Count 4 is not subject to the demurrer. 199 Ala. 177, 74 South. 246; 178 Ala. 515, 59 South. 445; 8 Ala. App. 591, 62 South. 554; 155 Ala. 375, 46 South. 487. Defendant was not entitled to the affirmative charge as to the fourth count, as the order was negligent and was an order. 168 Ala. 612, 53 South. 76; 194 Ala. 232, 69 South. 877; 149 Ala. 391, 43 South. 362; 143 Ala. 622, 39 South. 369; 165 Ala. 521, 51 South. 835; 199 Ala. 177, 74 South. 246; 8 Ala. App. 631, 62 South. 1009. The plaintiff's intestate was not negligent. 165 Ala. 521, 51 South. 835; 122 Ala. 231, 25 South. 34. Whether plea F was proven was a question for the jury. 122 Ala. 118, 26 South. 127; 201 Ala. 521, 78 South. 875; 149 Ala. 465, 43 South. 110; 203 Ala. 25, 81 South. 815; 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542.

THOMAS, J. The suit was for personal injury received by an employee.

The submission to the jury was on counts 4, 5, 6, and 7. Count 4 is for negligence based on subdivision 2 of the Employers' Liability Act; count 5 is framed under subdivision 5, charging negligence on the part of a person in control of a car upon a railway in defendant's mine in failing to have a light or signal upon said car or cars at the time of said injury; and counts 6 and 7 are framed under the second subdivision, charging wantonness to a superintendent or servant in charge of a car upon a railway operated in defendant's mine. Code, § 3910.

[1] Demurrer to count 4, overruled by the court, is assigned as error. It is averred in the count that—

While plaintiff's intestate "was employed by the defendant, to wit, a helper to defendant's trackmen, plaintiff's intestate was run over or against by a car or cars on a track of defendant's railway, and was so injured that he died; and the plaintiff avers that said injuries and damage were caused by reason of and as a proximate consequence of the negligence of a person in the service or employment of the defendant, and who was intrusted by the defendant with superintendence, whilst in the exercise of such superintendence, viz., Joe Pate, negligently caused said car or cars to run upon or against the plaintiff's intestate, and so injured him that he died."

It is free from the grounds of demurrer directed thereto. A. G. S. R. Co. v. Flinn, 199 Ala. 177, 74 South. 246, 248; T. C. I. & R. Co. v. Moore, 194 Ala. 134, 140, 69 South. 540; Republic I. & S. Co. v. Williams, 168 Ala. 612, 617, 53 South. 76; Little Cahaba Coal Co. v. Gilbert, 178 Ala. 515, 59 South. 445; Woodward Iron Co. v. Marbut, 183 Ala. 310, 62 South. 804; A. G. S. R. Co. v. Neal, 8 Ala. App. 591, 62 South. 554; South. Cot. Oil Co. v. Woods, 201 Ala. 553, 78 South. 907.

[2] Whether a jury question was made under the fourth count is presented for decision by the refusal of the general affirmative charge, requested in writing, and is insisted upon in argument. Defendant's counsel says that the negligence ascribed to Superintendent Joe Pate in count 4 was "in saying to intestate, 'Come on, boys, let's go,' or words to that effect, while Pate and Brooks were in the toolhouse"; that "a careful reading of the record shows that this order or direction, if it can be said to be an order or direction, was given while they were both in a place of safety in the toolhouse a number of feet from the track on which intestate was killed." It has been held by this court:

That "where the boss driver was directing the work in a mine, and had control of the employee, and both the boss driver and the employee were subject to the orders of the bank boss, and the bank boss, addressing every one standing around, said, 'Come ahead, and let's clean up the wreck, and get the cars running,'

and the boss driver was present at the time, the question whether the boss driver was thereby authorized to order the employee to aid in the work, though outside of his regular employment, so as to make the employer liable for any negligence," was a question for the jury. Republic I. & S. Co. v. Quinton, 194 Ala. 126, 132, 69 South. 604.

Defendant's said superintendent in charge at the time of the injury testified for plaintiff, saying:

"On the 9th day of July, 1918, I was trackman on the slope at Bessie mine, and sometimes had from one to two men working under me, and at the time of his death Mr. Admiral H. Brooks was working under me, and I was his boss, and I was intrusted by the company with authority to direct him what to do and I had to tell him what to do, and he was expected to obey my orders. * * * The slope entry was under the ground, and the track laid along it for the operation of cars, and it was handled by a wire rope pulling the cars out and letting them down. I was near to Admiral H. Brooks at the time he lost his life, at the toolhouse just below the ninth left where we all get tools and keep supplies for the mines, * * * about halfway down the slope. * * * The tools kept in the toolhouse were the tools used in the track work, used by me and the other track men there. Just before Brooks met his death I came down the slope, and Brooks was standing in that place (indicating). The duties of Brooks and myself necessitated us all being on the slope at that time, and our duties necessitated us crossing over the rope back and forth every day and working up and down the slope the full length. When I came down Brooks was standing in the front room, and I remarked to him, 'I guess you thought I wasn't coming down this morning'—I was late—and he said, 'No; I heard you were getting some work done on top.' I told him, 'Get your hand full of sixtypenny nails and we'll go down the slope and do some work below;' that we would go down and do work at the transfer where two tracks went together; * * * and he went and got the nails in the toolhouse and held them up and says, 'Is that enough? and I told him, 'Yes.' * * * I says, 'Let's go, boys,' addressing my helper, and we come down the track. * * * Before I called Mr. Brooks and said, 'Let's go, boys,' I did not look up and down the entry to see whether there was a trip that we were going to run into. The slope was straight, and it was dark in there, and ran something like three-quarters of a mile down in the earth. The company did not have lights in the mine along the entries so the men could see, and had no method by which they light up the entry so the men working on the entry could see a trip. * * * Without lights on the entry or on the trip the only means a man had to see the trip would be the noise of the trip and the movement of the rope, and from the light he had on his head. If the rope was running a man could tell which way it was going if he could see which way the rope was going, but he could not tell whether the trip was a mile away or in 30 or 40 feet, not by

the rope. * * * This particular trip was running fast, and it was about 35 feet from him when I saw him. I went out and crossed the rope and crossed the track and said, 'Come on, boys,' and I suppose Mr. Brooks followed me, but I didn't look back to see how far he was behind me, and I just did get across the track when the trip rushed by."

Mr. Williamson, as a witness for plaintiff, confirms the testimony of witness Pate, saying:

"Before the accident I went out of the toolhouse first, then Mr. Pate, and then Mr. Brooks. Mr. Pate was the boss, and had charge of and superintendence over Mr. Brooks, and I heard him say to Mr. Brooks, 'Come on, let's go,' right in the toolhouse, standing in the door. Then Mr. Pate started, and I started with him, and Mr. Brooks too, but Mr. Pate was speaking to Mr. Brooks, and I went along. When I got outside of the toolhouse I couldn't see the trip until I got out on the track, because there wasn't a light on it, it was a blind trip, and I looked and it was right on me before I could see it, say about 12 or 15 feet, and traveling pretty fast, about 20 or 25 miles an hour."

From these circumstances, it was for the jury to say whether the statement of Superintendent Pate to plaintiff's intestate, though not in the form of an order, was the order of such superior official to Brooks and to which the latter was bound to comply in the performance of his duties, and while complying met his death. Choctaw Coal & Min. Co. v. Dodd, 201 Ala. 622, 79 South. 54, 56; Republic I. & S. Co. v. Williams, supra, 168 Ala. 625, 53 South. 76; Woodward Iron Co. v. Lowther, 194 Ala. 232, 234, 69 South. 877; Woodstock Iron Works v. Kline, Adm'r, 149 Ala. 391, 394, 399, 43 South. 362; King v. Woodstock Iron Co., 143 Ala. 632, 636, 42 South. 27.

In the answer to count 4, plaintiff joined issue on plea F. No ground of demurrer challenged its sufficiency for manner of or failure in averring that plaintiff's intestate negligently went upon the track without taking necessary precautions to prevent injury from a rapidly approaching car or negligently failing to ascertain the approach of the cars in dangerous proximity to the point of collision. The plea avers that—

"Plaintiff's intestate was himself guilty of negligence which proximately contributed to his injuries and death, which said negligence consisted in this: Plaintiff's intestate went on to the defendant's track on which said car or cars was or were being operated, and while said cars were rapidly approaching on said track, and in close and dangerous proximity to him, without first ascertaining whether or not the car or cars was or were approaching on said track, and as a proximate consequence thereof, he was struck by said car or cars, and so injured that he died."

While the plea concludes with the averment that "plaintiff's intestate went onto the defendant's track· * * * without first ascertaining whether or not the car or cars was or were approaching on said track," it does not aver that plaintiff's intestate went upon said track without first ascertaining whether or not the car or cars was or were rapidly approaching on said track, and in close and dangerous proximity to plaintiff's intestate. It may well be questioned if the plea contains the equivalent of averment that he negligently went upon the track without first ascertaining whether or not the car or cars was or were rapidly approaching thereon and in close and dangerous proximity to him. It is pertinent to observe that there is evidence showing that the approach of a car may be ascertained or heard some distance away before it reaches a given point, by the movement of the ropes and rollers used in propelling the car or cars, and by the noise of the car or cars in close proximity, and that the proximity of plaintiff's intestate in the toolhouse just before he went on the track was such that he may or may not have ascertained this movement of the car or cars. The evidence is susceptible of different inferences as to whether or not he could have ascertained the direction in which the car or cars was or were moving, and the distance of the car or cars from him on the track where he received his injuries. In response to the application for rehearing, we will say that the evidence has been read at length, and we are of the opinion that a jury question was presented under the issues made by the fourth count. Bromley v. Birmingham Min. R. R. Co., 95 Ala. 397, 404, 11 South. 341; Tobler v. Pioneer Min. & Mfg. Co., 166 Ala. 482, 517, 52 South. 86; Bloom v. City of Cullman, 197 Ala. 490, 497, 73 South. 85.

Defendant's pleas of contributory negligence are set up in plea 8 that plaintiff's intestate was guilty of negligence which proximately contributed to his injuries and death, in that he negligently went onto the track of defendant on which the car or cars was or were then and there being operated, "when he knew that the car or cars was or were approaching on said track in dangerous proximity to him, and as a proximate consequence of such negligence he sustained the injuries from which he died"; and in plea F that said intestate was guilty of negligence which proximately contributed to his death, in that he "went onto the defendant's track on which said car or cars was or were being operated, and while said cars were rapidly approaching" on said track, and in close and dangerous proximity to him without first ascertaining whether or not the car or cars was or

were approaching on said track, and as a proximate consequence thereof," etc.

[3, 4] Two inconsistent issues of contributory negligence were insisted upon in the trial. That there may be inconsistent issues presented by separate pleadings and replications, and each issue referred to its own relative pleading, is recognized by former decisions of this court. Ferdon v. Dickens, 161 Ala. 181, 49 South. 888; Pope v. Welsh's Adm'r, 18 Ala. 631. During the delivery of the oral charge, defendant's attorney said to the court:

"My theory is, it was his' [plaintiff's] duty to stop, look, and listen, and if he did stop, look, and listen, and found out, and knowing, the cars were coming, and went on [the track], he was negligent, and without knowledge he was negligent. I have two theories; one with and one without knowledge, in both of which he would be negligent. If your honor tells the jury what his duties were in crossing the track, I think it would be sufficient."

Thereupon the court charged the jury as to these several defenses set up by defendant's pleas. In submitting the issues of fact under this pleading to the jury, we find no reversible error.

The affirmative charge under the fifth count of the complaint was properly refused. So of refusal of affirmative charges as to counts 6 and 7. The foregoing and other testimony made jury questions under said counts.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.