## WOODWARD IRON CO. v. THOMPSON.
### (6 Div. 664.)

(Supreme Court of Alabama. Nov. 23, 1922.
Rehearing Denied Jan. 25, 1923.)

**1. Master and servant ⬦259(7)—Complaint held to charge negligence of fellow servant under statute.**

In an action against a mine operator for injuries sustained by an employé through the negligence of a locomotive engineer, a complaint averring that plaintiff was injured while covering a spool of wire in close proximity to the track, and that to do such work it was necessary for plaintiff to stand upon the cross-ties in dangerous proximity to trains, *held* sufficient to make applicable the statutory fellow-servant rule of Code 1907, § 3910, subd. 5.

**2. Master and servant ⬦258(3)—Complaint alleging lookout knew of "danger" held to charge subsequent negligence.**

In an employé's action for injuries against a mine operator, through the negligence of a locomotive engineer operating a train striking plaintiff while at work in close proximity to the track, a count in the complaint averring that the lookout on the approaching train "knew of plaintiff's danger" and negligently failed to signal the engineer, *held* sufficient as against demurrer, the word "danger" being equivalent to "peril," and sufficiently disclosed subsequent negligence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Danger.]

**3. Appeal and error ⬦1058(2)—Refusal to allow witness to answer not reversible error, where answer. excluded subsequently admitted.**

In an employé's personal injury action, it was not error to refuse to allow a witness to state whether or not another employé who had acted as a lookout at the time of the injury was dead, where the witness was later permitted to state that he did not know whether such other employé was dead or not.

**4. Evidence ⬦528(2)—Whether young man recovers more quickly from injury than an old man held proper subject for expert testimony.**

In an action for personal injuries sustained by a negro 60 years old, it was not error to permit a medical witness to testify that a young negro would recover much more quickly from an injury than an old negro man of 60, the matter being one as to which an expert might testify.

### On Rehearing.

**5. Master and servant ⬦296(17)—Charge as to employé's peril held properly refused as misleading and confusing.**

In an employé's action for injuries sustained through being struck by defendant's train while at work covering a spool of wire in dangerous proximity to the track, a charge requested by defendant that if the jury believe that plaintiff "was at work near the spool and at a place where a passing train would not hit him, he was not then in peril, as that term is understood in the law," *held* properly refused as misleading and confusing in not indicating the time when plaintiff was not in peril, as related to the time of the injury, and when defendant's agents in charge of the train last saw him or should have seen him engaged in his labors.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Action by Dan Thompson against the Woodward Iron Company. Judgment for plaintiff, and defendant appeals. Affirmed.

For further statement see 205 Ala. 490, 88 South. 438.

Count 1 on first trial reads:

"The plaintiff claims of the defendant $5,000 as damages for that on, to wit, the 29th day of April, 1918, the defendant corporation was operating an ore mine in Jefferson county, Ala., and in the conduct of said business used a locomotive and train of cars operated upon a railroad track. The plaintiff avers that he was at said time and place an employé of the defendant and was engaged as a laborer, at work near said railroad track of the defendant. Plaintiff avers that, while so engaged at his work for the defendant, he was negligently run over, upon, or against by a car or train of cars then and there attached to the locomotive which was backing said cars upon said track. Plaintiff avers that as a proximate consequence of said negligence he was greatly injured," etc.

"Plaintiff avers that all of his said injuries aforesaid were proximately caused by the negligence of a person in the service or employment of the defendant company, to wit, one Will Shaddix, who had charge or control of a signal, point, locomotive, engine, electric motor, switch, car, or train upon a railway, or of some part of the track of a railway of defendant and which said negligence consisted in negligently running or operating, or causing to run said locomotive, engine, car or train, over, upon or against the plaintiff, proximately causing his injuries as aforesaid."

The following amendment was made after reversal:

"Comes the plaintiff in the above styled cause and by leave of the court first had and obtained amends count 1 of his complaint as amended, by substituting for the words 'at work near said railroad tracks of the defendant,' the following paragraph: And plaintiff further avers that the work he was doing at said time and place was covering a spool of wire, which spool of wire was lying in very close proximity to the track of the defendant, on which said train was run and in covering said spool it was and became necessary for the plaintiff, in order properly to cover the same, to stand upon the cross-ties of defendant's track in very close and dangerous proximity to trains operated on said track by defendant, and while plaintiff was so standing on cross-ties in the work of covering said spool or cable in such close and dangerous proximity as aforesaid, he received his injuries as aforesaid."

---

### Count 5 reads:

"Plaintiff claims of defendant, a corporation, $5,000 as damages for that on, to wit, the 29th day of April, 1918, plaintiff was in the employment of defendant, and defendant used and operated a railroad in its business and his duties and labor for the defendant required him to cover a spool of wire or cable, or in dangerous proximity to a railroad track used by defendant in its business while and when cars and trains were operated thereon by defendant and plaintiff was on or in dangerous proximity to said railroad track, on said date in the performance of his duties as an employé of the defendant, and at said time and place was in danger, from a train of cars approaching him on said track and on said train of cars an employé of the defendant, acting within the line and scope of his duty as such, named Will Gayle, was acting as a lookout on the car nearest to plaintiff of the approaching train, and it was his duty then and, there to signal, and he was in charge and control of said signals, to the engineer in charge of the engine driving said cars, of the presence of any persons on said track or in dangerous proximity thereto, and plaintiff avers that said Will Gayle saw and knew of plaintiff's danger at said time and place, in time to have warned or informed the engineer of plaintiff's danger, so that the engineer could have avoided striking plaintiff, but, nevertheless, and notwithstanding said knowledge on his part, the said Gayle negligently failed to signal to or inform the said engineer so in charge of the defendant's engine, of the plaintiff's said danger in time for the engineer to avoid striking plaintiff, and as a proximate result thereof the said train of cars struck plaintiff and damaged and injured him as set forth in count A of this complaint."

Defendant's special plea set up, in substance, that plaintiff was engaged in covering certain spools of cable, standing to the side of the railroad track, a sufficient distance therefrom for a person exercising reasonable care to do the work without getting in the danger zone; that with knowledge of the fact that trains would likely pass along the track defendant negligently allowed his body to be within the danger zone and was injured.

The following charge requested by defendant was refused by the court:

"A. If you believe from the evidence that Dan Thompson was at work near the spool and at a place where a passing train would not hit him, he was not then in peril, as that term is understood in the law."

Nesbit & Sadler, of Birmingham, for appellant.

A laborer in and about the operation of an ore mine and one in charge or control of a railroad train do not show such community of employment as renders them fellow servants, as that term is understood in the law. 167 Ala. 263, 52 South. 878, 140 Am. St. Rep. 28. Count 5 was not sufficient, under subdivision 5 of Code, § 3910, or as a subsequent negligence count. 158 Ala. 532, 48 South. 114;

159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32. Count 1 did not state a cause of action. 191 Ala. 484, 67 South. 691; 202 Ala. 139, 79 South. 605; 189 Ala. 568, 66 South. 513; 197 Ala. 151, 72 South. 328; 190 Ala. 91, 66 South. 697. Charge A expresses the law, and should have been given. 191 Ala. 484, 67 South. 691; 189 Ala. 568, 66 South. 513; 190 Ala. 91, 66 South. 697.

Black & Harris and B. M. Allen, all of Birmingham, for appellee.

Employees brought by their employment into such close relation with the operation of the railroad as that danger therefrom constitutes an ordinary danger of the service in which they are engaged are fellow servants of those who operate signals, locomotives, etc. 167 Ala. 262, 52 South. 878, 140 Am. St. Rep. 28; 205 Ala. 490, 88 South. 438; 198 Ala. 311, 73 South. 550; 142 La. 788, 77 South. 600; 68 South. 472. An employee of a company may sue and recover as a stranger for injuries received on the railroad of the company. 167 Ala. 262, 52 South. 878, 140 Am. St. Rep. 28; 126 Miss. 60, 88 South. 638.

THOMAS, J. The suit was for personal injury under subdivision 5 of Code, § 3910.

[1] The former appeal is reported in 205 Ala. 490, 88 South. 438. The last trial resulted in judgment for plaintiff, the case being tried on counts 1 and 5 as amended. On former appeal count 1 was held subject to the demurrer assigned. On this trial the count was amended to meet the defect pointed out by Mr. Justice Miller. Under the amended count, both the injured employé (plaintiff) and the employé averred to be derelict in the discharge of his duties at the time and place were servants in the employ of defendant, within subdivision 5 of section 3910; that is to say, as employés in the discharge of their duties as such they were brought by their employment into such close relation with the operation of the railroad transporting the product of defendant's mine that the danger from its operation and the discharge of plaintiff's duties of his employment constitute an ordinary danger of the service or services in which the two employés were engaged, and, as so related in the discharge of their respective duties, come within the provisions of subdivision 5 of the statute. Woodward Iron Co. v. Thompson, supra; Woodward Iron Co. v. Hubbard, 201 Ala. 106, 77 South. 400, L. R. A. 1918C, 640 (a coke pusher machine that moved on a very wide track); Sloss-Sheffield S. & I. Co. v. Capps, 200 Ala. 610, 76 South. 968 (a tramway); Woodward Iron Co. v. Lewis, 171 Ala. 233, 54 South. 566 (a tramway in a mine). Demurrer was properly overruled to count 1 as amended.

[2] The demurrer to count 5 was properly

overruled. The averment was that plaintiff was in dangerous proximity to the track and in danger from a train of cars approaching on said track, and that defendant's servant in charge and control of said signals to the engineer in charge of the engine driving said cars, etc., "knew of plaintiff's danger at said time and place" and negligently failed to signal, etc. The word "'danger" as used in the complaint is the equivalent of "peril." Drennen Co. v. Jordan, 181 Ala. 570, 573, 61 South. 938, 939. The count was in conformity to that approved as a subsequent negligence count in L. & N. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812.

Defendant answered by pleas of the general issue and pleas of contributory negligence, 2 to 11 inclusive. Demurrer to said special pleas as answer to count 1 was overruled, except as to plea 4, and demurrer sustained to all special pleas as answer to count 5, leaving only the general issue as answer to the count declaring for subsequent negligence. Plaintiff's replication to the pleas of contributory negligence is:

"Defendant ought not to be allowed to defeat plaintiff's cause of action, by reason of the matters and things set forth in said pleas, for the reason that plaintiff, while he was upon or in dangerous proximity to said track, as alleged in his complaint, was in danger, and plaintiff avers that the danger was seen or known at that time to the defendant's said servant or agent, in charge or control of defendant's said train, but notwithstanding said knowledge on the part of defendant's said servant or agent, the defendant's said servant or agent in charge or control of defendant's said train, negligently permitted the same to run upon or against this plaintiff, thereby causing, proximately his injuries and damages, as set forth in the complaint."

The affirmative charge should not have been given. McMillan v. Aiken, 205 Ala. 35, 88 South. 135. Plaintiff as a witness testified that, during the whole time he was putting sheets of galvanized iron on the spool, he was in close proximity to said track and cars and was in the "danger zone"; that he had his back to the approaching train. The evidence further showed that the "lookout" on front of the train as it proceeded was looking ahead; that the train could have been stopped within a short distance (20 feet), and that while plaintiff was so situated (in the danger zone) the train proceeded a long distance; that there was a slight curve, but not sufficient to prevent one working around the tipple from seeing a train approaching several hundred feet away. The track was straight about 300 feet before reaching the curve. Such was the case dealt with and held a question for the jury in L. & N. R. Co. v. Morris, 179 Ala. 239, 245, 60 South. 933; S. S. S. & I. Co. v. Brooks, 204 Ala. 674, 87 South. 82; Holmes v. B'ham Sou.

R. Co., 140 Ala. 208, 37 South. 338; Woodward Iron Co. v. Thompson, supra.

Refused charge, which we denominate A, was abstract. Plaintiff testified that he threw the four pieces of sheet iron on the track and proceeded to the spool to cover it, remaining all the while within the zone of danger when he was executing the master's order to "cover the spool," and, while covering the same, was injured.

[3, 4] There was no reversible error in not allowing the witness Shaddix to answer the question: "State, if you know, whether or not Will Gales is dead," for the reason that the witness was later permitted to state that he did not know whether Gales was "dead or not." There was no error in permitting plaintiff's question to Dr. Ward: "Doctor, which is more likely or which recovers more easily from an injury, an old negro man 60 years old or a young negro," and answer: "Why, a young man would recover much quicker, of course." The evidence showed the plaintiff to have been 60 years of age at the time of his injury, and the matter inquired about was such as an expert may testify, and the doctor had theretofore qualified as an expert.

The judgment of the circuit court is affirmed.

Affirmed.

McCLELLAN, SOMERVILLE, and GARDNER, JJ., concur.

### On Rehearing.

THOMAS, J. [5] The other Justices believe that charge A was not abstract. However, a majority of the court, composed of ANDERSON, C. J., and Justices SAYRE, SOMERVILLE, GARDNER, and MILLER, agree with the writer that the charge was properly refused as being misleading and confusing, in that it did not define or indicate the time when plaintiff was not in peril, as related to the time of his injury and that, when defendant's agents in charge of the said train last saw plaintiff at or about his said labors, "covering the spool," or by the exercise of due diligence should have seen him so engaged or circumstanced.

Justices SOMERVILLE and MILLER believe that the effect and substance of the charge is covered in defendant's given charges.

The application for rehearing is overruled.

ANDERSON, C. J., and SAYRE, SOMERVILLE, GARDNER, and MILLER, JJ., concur.

McCLELLAN, J. (concurring specially). The action is for damages for personal injuries inflicted upon the plaintiff, Thompson, resulting from his being hit by defendant's engine or car attached thereto. The com-

plainant attributed his injury to simple negligence or to subsequent negligence after discovery of peril. Besides general traverse, Thompson's contributory negligence was also pleaded. The court instructed the jury that, if operatives of the engine or train became aware of Thompson's peril, as the engine or train approached the place where he was at work and where the collision with him occurred, then the operatives of the engine or train should have exercised the highest degree of care to avert injuring him; otherwise, ordinary care was the measure of the operatives' duty in the premises. It thus appears that a material factor in defining the degree of care required of the operatives in the circumstances was to be determined by recourse to the inquiry whether Thompson was in such peril before the approaching train as to impose upon the operatives the "highest degree of care" to which the court had referred in the oral charge. With the design to explain the oral charge in this particular, the defendant requested, and the court refused, this special instruction:

"If you believe from the evidence that Dan Thompson was at work near the spool and at a place where a passing train would not hit him, he was not then in peril, as that term is understood in the law."

It is to be observed that this request for instruction does not at all assume to conclude, even hypothetically, upon the issues of negligence on the part of either party.

On original consideration, in the opinion under review, this court justified the trial court's refusal of the quoted request upon the grounds that (a) it was abstract or (b) was defective in leaving undefined the peril to which it referred. As the court upon rehearing now concludes—a view in which the writer concurs—neither of these criticisms was well founded. The evidence, including the physical facts, precludes acceptance of the view, originally prevailing, that throughout the operation of actually covering the spool Thompson was in the zone of danger to be created by the approaching train when it reached a point opposite the spool, which was entirely clear of the track. In the light of many decisions discriminating initial negligence from subsequent negligence after discovery of peril, it is equally clear that the second (b) ground of criticism of the quoted request was untenable. Furthermore, the request, explanatory in character, employed the identical terms to which the court had given utterance in defining the degree of care required, in the contingency stated, of the operatives of the engine or train; and in unmistakable language excluded, hypothetically, the prerequisite to the exaction of the "highest degree of care."

The quoted request for instruction is now found faulty, for that it was misleading or confusing in this: It did not refer or define the plaintiff's peril, hypothetically mentioned therein, to the "time when plaintiff was not in peril, as related to the time of his injury." The criticism is not as clear as the object of its censure. The manifest intent of the instruction was to advise the jury that Thompson was not in peril while in a place, at work near the spool, where he would not be struck by the approaching train. Since it was admitted that Thompson, while standing on the cross-ties of the track, was struck by the train, and since this request for instruction hypothesized a status that placed him in a place of safety, it is obviously inapt to condemn this request because it did not contradict the undeniable fact that he was in peril when stricken by the train.

In the posture in which the case was put by the mentioned features of the oral charge of the trial court, the writer is of the opinion that this explanatory request was erroneously refused; but, since, on the present record, it is only possible that the request could have been needed to advise the jury as it was intended to do, the error of its refusal was without prejudice to defendant. Rule 45, S. C. Prac., 175 Ala. xxi, 61 South. ix.

These considerations lead to my concurrence in the affirmance of the judgment.