(127 So. 519)

**TURBEVILLE v. MOBILE LIGHT & R. CO.**

Div. 547.

Supreme Court of Alabama.
March 13, 1930.

Rehearing Denied April 17, 1930.

Jesse F. Hogan, of Mobile, for appellant.

Harry T. Smith & Caffey, of Mobile, for appellee.

**BROWN, J.**

■ Count 10A, to which a demurrer was sustained, to construe it most strongly against the pleader, as must be done on demurrer, alleges that plaintiff's intestate was upon the defendant's track upon which the defendant through its servants was operating a street car; that said car, without negligence on the part of the defendant's servants, was brought to a stop upon or against the body of said intestate, and "the safety guard attached to said car fell across the body of the said Earl Y. Turbeville with heavy pressure and was suffocating him; that said servants of the defendant in charge of said car having knowledge of the perilous situation of plaintiff's intestate under said car, as aforesaid, and while acting within the line and scope of their employment, negligently failed to back said car from or to lift the front end of said car off of the body of the said Earl Y. Turbeville, although there was ample time to have done so and saved the life of the said Earl Y. Turbeville; and that as a proximate consequence of said negligence the said Earl Y. Turbeville was killed."

These averments put plaintiff's intestate in the attitude of a trespasser who through his own negligence is placed in a position of imminent peril, without fault or negligence on the part of the defendant or its servants.

■ While it may be conceded that these circumstances imposed on those present the duty, from the standpoint of common humanity, to use their best judgment in doing what they could to relieve the unfortunate victim from his peril, we know of no principle of municipal law that imposed on the defendant or its servants a legal duty to relieve him by backing the car off his body or lifting it up so as to relieve his peril. It certainly could not be said that such duty rested on a mere bystander who witnessed his misfortune and who was in no way legally responsible for his predicament. If this be so, what reason can be found in the law to say that the defendant or its servants were under duty to act, when they were guilty of no wrong or negligence in producing or bringing about the unfortunate situation?

In Griswold v. Boston & M. R. R., 183 Mass. 434, 67 N. E. 354, 355, where the plaintiff, a trespasser who had been caught by the wheels on the tender of defendant's locomotive, without fault or negligence of the defendant's servants, sought to recover damages for delay in releasing her from her situation of peril and suffering, the court observed: "There is another view of this case, which strikes at the foundation of the plaintiff's claim. Her counsel has referred us to no case which supports the proposition that, if a person is injured through no fault of a railroad company, the latter owes a legal duty to the person injured to assist him. There is, of course, a moral duty, but in performing that duty the company is not liable if one of its servants does not use his best judgment in affording the necessary assistance."

And in Allen v. Hixson, 111 Ga. 460, 36 S. E. 810, an action by the servant against the master, in which damages were claimed for failure of the master to aid the servant, whose arm had been caught in machinery, without fault or negligence of the master, the court observed: "Being in no way responsible for the unfortunate occurrence, the master cannot be said to be guilty of a tort if he does not promptly take active steps in coming to the rescue. The only duty arising under such circumstances is one of humanity, and for a breach thereof the law does not, so far as we are informed, impose any liability."

While it must be conceded that the defendant's servants in charge of the street car were under duty to the defendant to remove the plaintiff's intestate from the 'track so that they might proceed, if this could be done without inflicting further injury on him, and in doing so would be acting within the line and scope of their employment, if, in discharging this duty, they negligently caused or accelerated the death of plaintiff's intestate, the company would be liable. American Car & Foundry Co. v. Inzer (Ind. Sup.) 86 N. E. 444; Northern Central R. Co. v. State, 29 Md. 429, 96 Am. Dec. 545; Gates v. Chesapeake & Ohio R. Co., 185 Ky. 24, 213 S. W. 564, 5 A. L. R. 507.

But mere failure of the servants of the defendant in charge of the street car, after it had been stopped by them, to take prompt steps to extricate plaintiff's intestate from his perilous situation under the safety guard, brought about solely by his own negligence, and without negligence on the part of defendant's servants, there being no legal duty on the part of the defendant to so extricate him, was, as a mattter of law, not an act or omission within the line and scope of their employment. Allen v. Hixson, supra; Union Pa-

cific Ry. Co. v. Cappier, 66 Kan. 649, 72 P. 281, 69 L. R. A. 513.

In our case of Louisville & Nashville R. Co. v. Young, 168 Ala. 551, 53 So. 213, and Weitzman v. Nassau Electric R. Co., 33 App. Div. 585, 53 N. Y. S. 905, liability was predicated on the hypothesis that the evidence authorized a finding by the jury that the servants of the railroad company engaged in the operation of the locomotive, after becoming aware of the peril, negligently failed to take proper steps to check the movements of the locomotive and avert the injury.

We are of opinion that the demurrers to count 10A, were sustained without error.

■ The case was submitted to the jury on counts 7, 8, and 9 of the complaint and the plea of the general issue. Count 7 alleges that defendant's motorman, "Gene Touart, after discovering the perilous situation of said intestate, and acting within the line and scope of his employment, negligently operated said street car, and as a proximate consequence said car collided with the said Earl Y. Turbeville," proximately causing his death. Counts 8 and 9 ascribe his death to the "willful, wanton, or intentional" conduct of the motorman in running the car against plaintiff's intestate.

The evidence shows that defendant, at the time of the catastrophe, was engaged in operating street cars between Prichard and Chickasaw, in Mobile county; that its car line leads in a northerly direction from Prichard toward Chickasaw, and crosses Turner road, a public highway, from one-half to three-quarters of a mile south of Chickasaw; that the usual stopping place to take on or discharge passengers is immediately north of the road crossing; that near this road crossing there is a community of some forty or fifty houses, some of these houses being from one to two blocks distant from the car line, and others from fifty to a hundred yards therefrom, as stated by one of the witnesses, a "pretty thickly settled" community.

Plaintiff's intestate boarded defendant's outbound car, in charge of Gene Touart as motorman and J. C. Higgins as conductor, going toward Chickasaw, after dark, on November 25, 1926, and was then in an intoxicated condition, and was assisted in getting aboard by one or two men.

When the car stopped immediately north of Turner road to discharge passengers, plaintiff's intestate left the car with others, and manifested his drunken condition by standing in the way of the car until he was requested by the motorman to move, and by other acts of indecent behavior. After he moved out of the way, the street car proceeded on its way to Chickasaw, leaving said intestate where he alighted from the car.

On the return trip, which, according to the evidence, was from fifteen to thirty minutes later, the motorman, when the car was "about one hundred feet" from it, discovered an object on the track, which later proved to be plaintiff's intestate, lying face downward prone upon the track, his feet extending over one of the rails. The car was brought to a stop short of contact by the trucks of the car with the body of said intestate. The safety guard, on the front of the car, however, passed over his body striking him with sufficient force to turn his body from face down to his side, and rested upon him with such pressure that it was necessary to lift the safety guard with a heavy timber before he could be removed.

Though it was not material to the issues formed by the pleadings, the evidence further shows, that defendant's servants, with the aid of others, took prompt steps to remove plaintiff's intestate from under the safety guard, requiring from five to fifteen minutes to do so. The only physical evidence of injury was that there were some slight scratches or bruises on his face and chest. He expired shortly after he was taken from under the car, only breathed once or twice after his removal.

There was no evidence tending to show that said intestate was in any way injured in removing his body from under the safety guard. Still, if it should be conceded that there was such evidence, such injury was not within the issues presented by the pleadings, and what was said and done by the servants of the defendant, after the street car was brought to a stop, was not material to the issues in the case. Griswold v. Boston & M. R. R., supra.

■ The evidence being without dispute that plaintiff's intestate was lying prone upon the track, and unconscious from intoxication, a distance of from fifteen to thirty feet north of the road crossing, though it further appeared without dispute that he was on the track in the space where the car ordinarily stopped to take on waiting passengers, it being further shown that such passengers stood to one side of the track out of danger of being struck, the evidence offered by plaintiff as to the frequency of the use of the road crossing was not material as tending to charge the operatives of the car with notice that some person would be prone upon the track, asleep or unconscious. Southern Rwy. Co. v. Stewart, 179 Ala. 304, 60 So. 927.

■ For the same reason evidence offered by plaintiff to show that the motorman failed to blow the crossing signal was not material. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A. L. R. 1; Snyder v. Mobile Light & Ry. Co., 214 Ala. 310, 107 So. 451.

■ We are not of opinion that the court erred in sustaining the defendant's objection to the question put to the witness Turbeville, made the basis of assignment of error No. 9.

The witness was not shown to be an expert, nor that he had had experience in making observations under similar circumstances, and the jury was as competent to answer this question as the witness.

The same is true as to the question to the witness Wimpee, assignment of error No. 14.

■ Nor are we able to affirm error in the rulings of the court in respect to questions put to the witnesses as to the photographs exhibited to them. These photographs were not incorporated in the record nor certified here for inspection.

■ We think it too clear to permit of argument that the certificate of the coroner as to the fact and cause of the death of plaintiff's intestate, considered in the light of the issues in this case, was mere hearsay evidence, and the objection thereto was well sustained. Still, if it should be conceded that the certificate was admissible, its exclusion was without injury, for the reason that the evidence as to the fact of his death and as to the circumstances under which it took place is without material conflict.

■ This brings us to the question arising from the action of the court in giving the affirmative charge for the defendant.

There is no dispute in the evidence as to the fact that the motorman operating the car discovered the peril of plaintiff's intestate. He testified, as a witness for the plaintiff, "I could see down the track with that headlight at that time about one hundred feet. * * * Whether I could see two or three hundred feet was according to the weather. * * * I could not see two or three hundred feet at that time because the weather was bad. It was not exactly raining, but it was dark and hazy and inclined to be foggy. I was about one hundred feet from Earl Y. Turbeville when I first saw him. He was in between the tracks and his feet on the outside. He was about twenty-five or thirty feet from the crossing. When my car came to a stop his body was just about that distance from the crossing. The car did not move at all after it struck the body. The car proper did not strike his body. The life guard did strike his body. When I brought my car to a stop Earl Y. Turbeville's body was not quite, say about midway of the life guard. The life guard was resting across his body."

On cross-examination, this witness (Touart) testified: "The minute I saw the object on the track—I did not wait to see what it might be—I went to work to stop the car and stopped it immediately, as soon as possible. I stopped the car as quickly as I possibly could when I saw there was an object on the track. I used every effort available to stop it. I started to work to stop it before I realized what the object was. When I saw the object it was about one hundred feet ahead of me. My car was running about twenty-five miles an hour. The car is one of the big heavy cars, one of the heavy type double truck cars. I have been a motorman off and on for thirty years. * * * I came here in 1918. Taking a car of that size, a car like that one was running that night, and running twenty-five miles on hour, I could stop it in one hundred feet. I applied everything I had and stopped it. I could not have stopped it any sooner than I did under existing circumstances. The night was dark, hazy and inclined to be foggy. The atmosphere was very heavy and damp."

The evidence was without dispute that the motorman did not sound the whistle after he discovered Turbeville's body on the track, and appellant contends that this, in connection with the circumstances disclosed, necessitated the submission of the case to the jury, citing as an authority Ala. G. S. R. Co. v. McWhorter, 156 Ala. 269, 47 So. 84, 87; Southern Ry. Co. v. Gantt, 210 Ala. 383, 98 So. 192; A. G. S. R. Co. v. Sanders, 203 Ala. 57, 82 So. 17; L. & N. R. Co. v. Phillips, 202 Ala. 502, 80 So. 790; Woodward Iron Co. v. Thompson, 209 Ala. 53, 95 So. 270.

In the cited cases there was no evidence going to show that the party killed was drunk and unconscious, lying prone upon the track, face downward between the rails. The case most nearly in point is McWhorter's Case, supra, where the party killed, as some of the evidence tended to show, was lying down on the end of the ties, asleep, in daylight, and it was there held, that "there was evidence from which the jury could infer that the intestate had fallen asleep, and was not, therefore, conscious of the impending danger, and that a loud blast or blasts of the whistle might have aroused him, and warned him of the approach of the train in time to escape, and which would have required but a slight degree of time and space. Indeed, the engineer admitted seeing him 50 yards off, and evidently concluded that he was in a perilous position, as he attempted to stop, notwithstanding he could not do so before reaching him. If, therefore, he could have resorted to other preventative means, rather than attempting the impossible, it was his duty to have done so."

Under the circumstances disclosed in the instant case, it was, at most, a mere matter of conjecture as to whether the blowing of the whistle would have been effective, and was not sufficient to warrant a submission of the case to the jury. St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Smith v. Eudy, 216 Ala. 113, 112 So. 640.

■ We are of opinion that the evidence shows without dispute that the motorman, after he discovered the peril of plaintiff's intestate, promptly used all the means at hand, known to skillful motormen, to prevent the injury, and this was the full measure of his duty under the negligence count of the complaint. L. & N. R. Co. v. Young, 168 Ala. 551, 53 So. 213; Snyder v. Mobile Light & Rwy. Co., 214 Ala. 310, 107 So. 451.

We are also of opinion that the evidence fails to sustain the wanton counts, and that the affirmative charge for the defendant was given without error. Central of Ga. Rwy. Co. v. Corbitt, 218 Ala. 410, 118 So. 755; Southern Rwy. Co. v. Smith, 177 Ala. 367, 58 So. 429.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.